OPINION OF THE COURT
Douglas F. Young, J.
This court is presented with motions by the various parties in the above-entitled action. Each of the defendants moves to dismiss the complaint and/or for summary judgment (Motion Nos. 100, 101, 102 and 103) and plaintiffs cross-move for summary judgment (Motion No. 104).
This action was initially commenced by plaintiffs against the defendants to enjoin permanently the threatened use by the defendant Community Mainstreaming Associates, Inc. ("CMA”) of the easement over plaintiffs’ driveway for a purpose other than its express use, to wit; as a means of egress and ingress to a single-family residence. Plaintiffs amended the complaint to sue for damages for violation of said easement and to attack the constitutionality of section 41.34 of the Mental Hygiene Law.
PARTIES
Plaintiffs are the owners of the premises at 161 Station Road, Kings Point, New York, a one-family dwelling (referred to herein as "Zubli property”). The Zubli property was pur *323 chased in March, 1978 and plaintiffs reside there with their three children.
Defendants Ira Cavrell and Sadie R. Cavrell were, at the time of the commencement of this action, the owners of an adjoining property, also a one-family dwelling (referred to herein as "Cavrell property”).
Defendant CMA is a corporation formed pursuant to the Not-For-Profit Corporation Law and with the approval of the Department of Mental Hygiene. CMA’s purpose is to acquire a home to be used as a "community residential facility for the disabled” as defined in section 41.34 of the Mental Hygiene Law ("Padavan Law”). This home would be used as a group home for no more than 12 functionally retarded and mentally disabled adults.
Defendant Thomas A. Coughlin, III, is the Commissioner of the New york State Office of Mental Retardation and Developmental Disabilities. He is authorized by law to operate and license community residential facilities for mentally disabled persons.
Defendant Eastern Federal Savings and Loan Association of Sayville ("Eastern”) holds a first mortgage on the Cavrell property and consented to the assumption of said mortgage by CMA.
BACKGROUND
Plaintiffs commenced this action by serving the summons and complaint together with an order to show cause for a preliminary injunction. Plaintiffs sought an order pendente lite enjoining the defendants Cavrell from conveying title to their premises to CMA. The Cavrell property was benefited by an easement over the Zubli property’s driveway as a means of egress and ingress to Station Road. Plaintiffs argue that since 1955 the Cavrell house had been used as a single-family residence and that the subject easement was intended to benefit that use only. Since a group home would not be within the scope of the easement, they contended in the original complaint, the proposed use by CMA of the Cavrell property would violate the easement.
On May 11, 1979 this court (Young, J.) denied plaintiffs’ application holding that the proposed use would constitute a "family unit”, that the easement was unambiguous and without limitation and that plaintiffs failed to meet their burden *324 for obtaining preliminary injunctive relief. Instead, the parties were directed to proceed to trial.
Shortly thereafter plaintiffs served an amended complaint which realleges the cause of action contained in the original complaint and adds five additional causes of action. The first cause of action alleges that CMA’s proposed use of the premises as a community residential facility will violate the terms of CMA’s easement over the Zubli property. The second, third and fourth causes of action allege that Sadie R. Cavrell, CMA and Eastern are each answerable to plaintiffs for the breach of a restriction in the mortgage between Cavrell and Eastern and which mortgage has been assumed by CMA. The fifth and sixth causes of action allege that the threatened acts of Coughlin violate plaintiff’s constitutional rights and that the Padavan Law as applied in this case is unconstitutional.
FACTS
The facts in this case are not in dispute.
Plaintiffs are the owners in fee simple of the premises known as 161 Station Road, Village of Kings Point, New York, which is a one-family dwelling in an A-2 residential zoning district which, according to the village’s zoning ordinance, is restricted for single-family use. The Zubli property fronts on Station Road, a public street.
The premises known as 165 Station Road is contiguous to the rear of the Zubli property. This property, at the time this action was commenced, was owned by Sadie R. Cavrell who, in 1969, acquired title by a deed from herself and her husband, Ira Cavrell. In 1971 Sadie R. Cavrell executed a mortgage to Eastern which provided, in part, that the premises are to be improved by a one- or two-family dwelling only. The Cavrell property does not front upon a public street and access to Station Road is over the driveway of the Zubli property.
The Cavrell and Zubli properties were, at one time a single tract of land. When this tract was subdivided the common grantor conveyed what is now the Zubli property to plaintiffs’ predecessor in title and retained for himself that portion which is the Cavrell property. He did, however, reserve a right of way through the Zubli property by way of an easement over the driveway on the Zubli property for egress and ingress to and from Station Road. Because of the hilly topography of the Cavrell property the easement is the only means of getting to *325 and from Station Road. Said easement reads as follows: "Reserving to the parties of the first part, their heirs, successors and assigns, an easement running to the contiguous lands of the grantors over the present driveway near the north line of said Parcel C for egress and ingress including the right to erect and maintain two (2) signs containing thereon the occupants’ names and/or addresses on the northerly stone column at the entrance of said driveway, said easement to run with the land forever.”
This driveway is a partially unpaved private way approximately 8 feet in width, with no shoulders or walkways. It is maintained by plaintiffs. When the Zubli’s took title to their property they did so subject to the easement. The Cavrell property had, prior to plaintiffs taking title, been occupied and used as a single-family dwelling.
On or about March 29, 1979 Sadie R. Cavrell entered into a contract with CMA for the sale of the Cavrell property. CMA was interested in acquiring this property and obtaining, pursuant to the Padavan Law, the appropriate license from the defendant Coughlin to use the premises as a community residential facility for the care, maintenance and treatment of up to 12 mentally retarded, functionally disabled adults. The proposed use would also require two resident supervisors and other support personnel from time to time. The Office of Mental Retardation and Developmental Disabilities gave preliminary assent to CMA’s proposed use and notice was given to the Village of Kings Point of CMA’s plan. The village, after public hearings, gave its approval to the proposed use subject to certain conditions.
Plaintiffs commenced this action and moved to enjoin the closing of title. As discussed above, the pendete lite relief was denied and the matter was set down for trial. Plaintiffs then served the amended complaint now before the court and which is the subject of the various motions. Although this same court passed on and denied plaintiffs’ motion, it is not bound here by such determination as being the law of the case and the instant motions are given de nova consideration. It was expressly stated by this court that "the refusal of this Court in its discretion to issue the injunctive relief sought does not constitute the law of the case or an adjudication on the merits and the issues must be tried to the same extent as though no preliminary injunction had been applied for.” (Young, J., May 11,1979.)
*326 THE PADAVAN LAW
The Padavan Law (L 1978, ch 468), effective September 1, 1978, was approved by Governor Carey on July 6, 1978. It is an act amending the Mental Hygiene Law and the Eminent Domain Procedure Law. Its purpose is to codify site selections of community residential facilities for the disabled.
The declared legislative intent behind the Padavan Law is twofold. First, it is designed to meet the needs of the mentally disabled by providing, wherever possible, an opportunity for these handicapped individuals to remain in "normal community settings”. It is further designed to draw together the various State agencies, local agencies and local communities and to foster communication and co-operation (L 1978, ch 468, §D.
The law defines "community residential facility for the disabled” as any facility operated or licensed by the Office of Mental Health or the Office of Mental Retardation and Developmental Disabilities which provides a supervised residence for from 4 to 14 mentally disabled persons (Mental Hygiene Law, § 41.34, subd [a], par [1]). It further provides that such a facility shall be deemed a "family unit” for purposes of local laws and ordinances (§ 41.34, subd [e]).
Procedurally, the law requires that a sponsoring agency, such as CMA, must give notice to the municipality of the proposed program. The municipality then has 40 days to approve the site, suggest an alternative site or sites or object to the program. The municipality may only object to the establishment of the facility if it would result in a concentration of such facilities in the community (§ 41.34, subd [b], pars [l]-[5]). The municipality may hold a public hearing pursuant to local law before responding to the proposed program (§ 41.34, subd [b], par [2]). Any objection by the municipality shall be reviewed by the commissioner whose determination is reviewable pursuant to CPLR article 78 (§ 41.34, subd [b], par [5]; subd [c]). The Padavan Law amends section 206 of the Eminent Domain Procedure Law. Now, upon compliance with the licensing procedure, a public hearing is not required. The Eminent Domain Procedure Law requires "notice and hearing” before a property may be taken for public use.
On approving the Padavan Law the Governor’s message stated in part: "At the same time, the bill aims to facilitate the establishment of community residences by discouraging *327 frivolous legal challenges that have needlessly delayed proper establishment of such facilities in the past, at great cost to the litigants. This legislation attempts to encourage a process of joint discussion and accommodation between the providers of care and services to the mentally disabled and representatives of the community, rather than legal antagonism.” (NY Legis Ann, 1978, p 274; emphasis supplied.) The reference to "frivolous legal challenges” seemingly refers to a number of prePadavan Law cases which involved whether such group homes were to be considered the equivalent of single families. (See Little Neck Community Assn. v Working Organization for Retarded Children, 52 AD2d 90, mot for lv to app den 40 NY2d 803; Incorporated Vil. of Freeport v Association for Help of Retarded Children, 94 Misc 2d 1048, affd 60 AD2d 644; Tytell v Kaen, NYLJ, June 11, 1979, p 12, col 4 [Supreme Ct, NY County]; Taussig v Westchester Assn. for Retarded Citizens, NYLJ, April 18, 1979, p 15, col 5 [Supreme Ct, Westchester County]; Living Resources Corp. v Burns, 91 Misc 2d 919; see, also, Group House of Port Washington v Town of North Hempstead, 45 NY2d 266; People v Renaissance Project, 36 NY2d 65; City of White Plains v Ferraioli, 34 NY2d 300.)
THIS ACTION SHOULD BE DISMISSED AGAINST THE CAVRELLS AND EASTERN
The court will first take up the motions of the defendants Cavrell and Eastern to dismiss the complaint and for summary judgment.
The Cavrells’ motion is based on two arguments. The first argument is that Ira Cavrell is not a party in interest as he had divested himself of any title to the property in 1969. Therefore, he contends, the allegations in the complaint against him fail to state a cause of action. The second argument is that Sadie R. Cavrell has already conveyed title to CMA and that the use of the property has not changed. This defendant further argues that the representation made by her in the mortgage with Eastern that the premises are improved by a one- or two-family dwelling was not violated at the time CMA took title and assumed the mortgage.
This action should be dismissed against the defendant Ira Cavrell. He has not been the record owner of the Cavrell property since July 31, 1969. He is not a party in interest and the complaint fails to state a cause of action against him. He cannot be enjoined, temporarily or permanently, from trans *328 ferring title which he does not have nor is he in any way liable to plaintiffs for the consequences of his wife’s conveyance of title to CMA.
This action should likewise be dismissed against the defendant Sadie R. Cavrell. Since title has already passed to CMA she can no longer be enjoined from doing an act which has already been done. Further, the mere fact that the Cavrell premises have been conveyed to CMA does not change the use of the premises and the complaint and affidavits fail to substantiate that any such changes have been made. As discussed below, no representations or warranties were made by this defendant of which plaintiffs were the beneficiaries, or upon which they could justifiably rely. At best, the complaint alleges that Sadie R. Cavrell was the record owner of the Cavrell property, that the same was benefited by the subject easement and that the premises were used as a one- or two-family residence. Plaintiffs have not shown that they are entitled to recover damages against this defendant.
Eastern moves to dismiss and for summary judgment on several grounds. First, it argues that plaintiffs do not allege any actual violation of the mortgage clause reciting that the Cavrell property would be used as a one- or two-family dwelling; second, that this clause cannot be construed as a restrictive covenant and third, assuming the clause is construed as a restrictive covenant, that plaintiffs have no cause of action against Eastern for any such breach.
The court finds that this action should be dismissed against the defendant Eastern. The gravamen of the complaint against Eastern alleges that Eastern, with knowledge of CMA’s intended use of the Cavrell property, did, in violation of the covenant to use the premises as a one- or two-family dwelling, permit CMA to assume the mortgage to Eastern, which stated in part, "[s]aid premises are improved or will be improved with a one (1) or two (2) family residence or dwelling only.” Plaintiffs were not a party to said mortgage. In fact, plaintiffs did not acquire title to their property until seven years after this mortgage was made. Without any facts that show an intention that plaintiffs or their grantors were to be benefited by the restriction they have no cause of action for any alleged breach (Steinmann v Silverman, 14 NY2d 243; Bristol v Woodward, 251 NY 275; Equitable Life Assur. Soc. of U. S. v Brennan, 148 NY 661).
The complaint fails to allege any facts to establish that the *329 mortgage was intended to confer a beneficial interest upon plaintiffs. Neither plaintiffs nor their predecessors in title were parties to the mortgage. There is no provision in the mortgage which can be construed to make them or anyone else not a party to the mortgage a beneficiary of any term, condition or covenant contained therein. Unless otherwise expressly provided for in the mortgage, all covenants bind the heirs, executors, administrators, successors and assigns of the mortgagor and inure to the benefit of the heirs, executors, administrators, successors and assigns of the mortgagee (Real Property Law, § 257). Nothing is found in the mortgage that expressly provides for benefiting plaintiffs or their predecessors in title. Further, the mere transfer of title to CMA does not violate any restriction in the mortgage and in the absence of any facts alleging an actual change in use no cause of action for its breach exists. Parenthetically, the court notes that such restrictive language in mortgages like the one held by Eastern is inserted to obtain the benefit of a $25 tax exemption from the mortgage tax (Tax Law, § 253, subd 2, par [a]) and not with the intent to create a restrictive covenant.
Thus, there remain only two other issues which confront the court. The first issue concerns the plaintiffs’ contention that CMA’s proposed use would violate and overburden the easement. The second issue concerns the plaintiffs’ contention that the legislative scheme for licensing CMA’s proposed use, i.e., the Padavan Law, is unconstitutional. With respect to these issues the court finds that: (1) the easement is not violated and (2) the Padavan Law is constitutional.
CMA’S PROPOSED USE WILL NOT VIOLATE THE EASEMENT
Plaintiffs argue that since 1955 the Cavrell property has been used as a single-family residence and that the easement over the Zubli property was designed for that use and contemplated that use only. Thus, they contend, the proposed community residential facility would be a change in the use of the Cavrell property and therefore violate and overburden the easement.
This same issue was presented to this court in plaintiffs’ motion for a preliminary injunction. This court, in denying the motion for injunctive relief, ruled that the language of the easement is unambiguous and unconditional. The meaning of the easement is clear.
As the court stated in denying plaintiffs’ motion for a *330 preliminary injunction: "There are no words of restriction in the easement other than that it shall be used for 'egress and ingress’. It does not import any limitations in its use and so long as the driveway is used for this purpose only the easement will not be affected by subsequent changes in the use and occupancy of the dominant premises (Arnold v. Fee, 148 N. Y. 214 (1896); Mittnacht v. Montana, 205 App. Div. 643 (1st Dept. 1923)). As the language of this easement is unambiguous circumstances surrounding the grant of the easement and the situation of the parties may not be considered (Miller v. Edmore Homes Corp., 285 App. Div. 837 (2d Dept. 1955), afFd, 309 N. Y. 839 (1955)). The right-of-way for egress and ingress is available to the heirs, successors and assigns of the dominant estate, or, in this case, CMA.” (Young, J.) The above cases are in accord with Powell, Real Property (vol 3, § 415) which at page 34-183, states "with respect to the scope of the easement created, courts stress the primary control exercised by the language of the creating conveyance.”
Upon reconsideration of this same question this court adheres to its prior finding that the easement speaks for itself and does not purport to be limited to any particular use. There is no language in the easement, expressed or implied, which restricts or qualifies its use other than for a means of entrance and exit from the Cavrell property to Station Road. The easement omits any reference as to who may use it or for what purpose. Thus, CMA is entitled to use the easement for "egress and ingress” regardless of whether the Cavrell property retains its traditional character or is used as a "community residential facility”. Any actual change in the use of the dominant estate does not, in the absence of any qualifications, change the use of the easement. "The omission from the grant here of any words limiting the use of this easement * * * must control the construction of the grant, for a limitation upon the existence and continuance of an easement privilege can be predicated upon a change in the character or use of the dominant property only when an intention to impose such limitation is found in the language of the grant itself.” (Mittnacht v Montana, 205 App Div 643, 646.)
The court does not find, as plaintiff would have it, that the references in the easement of the right to erect two signs with the occupants’ names and/or addresses is evidence of intention to qualify the use of the dominant estate (the Cavrell property) for use by a biological family unit. This is a sitúa *331 tian where the easement provides that it was to be "as the same is now used.” (Lattimer v Sokolowski, 31 NYS2d 880, 881.) Nor is this easement one that was to be used "for all ordinary purposes of ingress and egress” (Board of Educ. v Nielsen, 21 Misc 2d 368, 370). If the subject easement read that it was to be used for "ordinary purposes”, then this court would have to look beyond the language of the grant. However, in this case there is a conspicuous absence of any qualifications, expressed or implied, and therefore CMA is entitled to use the easement for "egress and ingress” as is necessary.
Since it is not necessary to construe the easement to determine whether CMA’s proposed use would constitute a single-family use, plaintiffs’ reliance on Tytell v Kaen (supra) is misplaced. Tytell, unlike the other pre-Padavan Law cases, ruled on whether a group home of a similar type was a single family for the purpose of interpreting a private restrictive covenant (other pre-Padavan Law cases involved compliance with local zoning ordinances). In that respect it is analogous to the instant case since here the court is confronted with construing an easement. However, Tytell is distinguishable from the instant case by the very nature of the language used in the restrictive covenant. There, the owner of the tract of land imposed covenants providing that each parcel was to be used solely for a private dwelling house for the use of a single family, and not to be used for a public or private home for treatment, shelter or care. Thus, an issue of fact was raised as to whether or not the proposed group home was a single-family or an institutional facility. If it were the latter then its use was prohibited by the covenant. Since, as discussed above, the easement in question has no restrictive language as to use, there is no need (as there was in Tytell) to categorize CMA’s proposed use as familial or institutional.
THE PADAVAN LAW IS CONSTITUTIONAL
The plaintiffs argue that the Padavan Law is unconstititional in that it fails to provide for notice and public hearing and that, as it applies to the circumstances in this case, it encroaches upon plaintiffs’ property without substantial relation to a legitimate governmental purpose.
It is settled law that courts have inherent authority to determine whether a duly enacted statute transcends constitutionally imposed limits (8 NY Jur, Constitutional Law, §§ 42, *332 43). However, a court of first instance should approach a constitutional question with reluctance and caution. "While there is no rule of law limiting the power to determine constitutional questions to courts of particular rank in the judicial hierarchy, it has been authoritatively stated that a court of first instance should as a general rule and if possible hesitate to determine unconstitutionality, save where the consequences may be severe and the damage irreparable or where invalidity of the statute is apparent on its face * * * This policy to leave questions of constitutionality to appellate tribunals 'is especially desirable where the law is of great importance and far-reaching effect, or if the law has been effective for an appreciable period of time.’ ” (Blye v GlobeWernicke Realty Co., 68 Misc 2d 948, 950, affd 40 AD2d 950, revd on other grounds 33 NY2d 15; see, also, McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd a; Comiskey v Arlen, 55 AD2d 304, affd 43 NY2d 696; People v Kiger, 68 Misc 2d 100; Piantoni v City of New York, 18 Misc 2d 1030.) This does not mean that the court of first instance shirk its duty to determine an issue involving the constitutionality of a statute (People v Paddock, 56 Misc 2d 123) but it does require that the challenged legislation be manifestly invalid before a finding of unconstitutionality (8 NY Jur, Constitutional Law, §79).
In approaching the issue of a statute’s constitutional validity there is a fundamental rule that it is presumed to be constitutional (McKinney’s Cons Laws of NY, Book 1, Statutes, § 150, subd b; Wiggins v Town of Somers, 4 NY2d 215; People v Broadie, 45 AD2d 649, affd 37 NY2d 100). However, this is a rebuttable presumption against which unconstitutionality must be demonstrated beyond a reasonable doubt (Fenster v Leary, 20 NY2d 309; Matter of Van Berkel v Power, 16 NY2d 37). Any doubts must be resolved in favor of constitutionality. As stated by the Court of Appeals, "[i]t has been our repeated admonition that legislation should not be declared unconstitutional unless it clearly appears to be so; all doubts should be resolved in favor of constitutionality of an act. This court has repeatedly stated that the wisdom of legislation is not for us to determine (Johnson v City of New York, 274 NY 411, 430).
The plaintiffs’ first constitutional argument is that the Padavan Law obviates the necessity for notice and public hearing to affected property owners while purporting to effect *333 zoning changes by declaring community residential facilities to be family units. Constitutional due process, they submit, requires that before a zoning change affecting a particular property or adjacent property is adopted, notice must be given to affected property owners and a public hearing held.
The Padavan Law does not provide for notice to any affected property owners or for their participation in the licensing process. While the municipality may hold public hearings, the sole ground upon which the municipality may object to the proposed facility is that it would result in a concentration of community residential facilities in the municipality (Mental Hygiene Law, § 41.34, subd [b], par [5]). Further, it appears from reading the statute that any review of the commissioner’s determination to grant or deny a license is limited to either the sponsoring agency or the municipality. Thus, plaintiffs argue, by declaring the facility to be the equivalent of a single-family home without affording them an opportunity to participate in the procedure, the Padavan Law effects a zoning change without due process.
It is the conclusion of this court that the absence of any provision for notice and public hearing in the Padavan Law does not render it constitutionally defective. The Padavan Law is an act of general legislation and therefore requires neither notice nor a public hearing to effect the desired change.
In the case of San Diego Bldg. Contrs. Assn. v City Council (13 Cal 3d 205, app dsmd 427 US 901), the Supreme Court of California held, inter alla, that due process requires notice and hearing only in quasi-judicial or adjudicatory settings and not in respect to the adoption of general legislation.
In the San Diego case the voters of the City of San Diego, a charter city, enacted a zoning ordinance through the initiative process. The ordinance established a 30-foot height limitation for buildings constructed within the city’s prescribed coastal zone. Plaintiffs, building contractor associations, challenged the validity of the ordinance contending that the city charter and the due process clause of the Federal Constitution precluded the city from adopting any zoning ordinance without affording all affected property owners notice and hearing (relying primarily on Boddie v Connecticut, 401 US 371).
The court concluded that notice and hearing are required by due process only in quasi-judicial or adjudicatory settings and *334 not with respect to general legislation such as the ordinance in question. In so ruling the court said (pp 211-213):
"Plaintiffs’ entire due process argument, however, is founded on an erroneous premise. From the inception of this nation’s legal system, statutes of general application have regularly been enacted without affording each potentially affected individual notice and hearing. As we shall explain, it is black letter constitutional law that due process requires 'notice and hearing’ only in quasi-judicial or adjudicatory settings and not with respect to the adoption of general legislation. * * *
"'Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule.’ * * *
"[T]he decisions applying the due process requirements of notice and hearing have all involved governmental decision-making in an adjudicative setting, in which the government’s action affecting an individual was determined by facts peculiar to the individual case; the present matter by contrast, involves the adoption of a broad, generally applicable, legislative rule. * * *
"We are thus not faced in the instant case with any of the great number of more limited 'administrative’ zoning decisions, such as the grant of a variance or the award of a conditional use permit, which are adjudicatory in nature and which thus involve entirely different constitutional considerations. Instead we review the enactment of legislation of the classic mold, establishing a broad, generally applicable rule of conduct on the basis of a general public policy.” (Emphasis in original; citations, footnotes omitted.)
This court, adopting the logic and reasoning of the Supreme Court of California, holds the Padavan Law constitutional despite the absence of any provision affording plaintiffs’ notice and hearing. The Padavan Law is an act of general legislation which declares all duly licensed community residential facilities to be family units. The finding that a licensed home is a *335 family unit is accomplished by legislative flat. It does not come about as the result of any adjudication or quasi-judicial determination on the particular facts and makeup of a proposed facility. If the proposed facility meets the requirements for licensing then the Legislature has seen fit to deem the facility to be the equivalent of a family unit. Due process does not require all affected property owners be afforded notice and hearing each time a Padavan-type license is granted.
The San Diego case determined that while the legislation may have an impact on real property rights, that does not entitle such legislation to different constitutional procedures than other legislative matters. "The due process clause of our federal Constitution applies uniformly to deprivations of 'life, liberty or property, ’ and the time has long past when property rights were exalted over our citizens’ rights in life or liberty. Legislative enactments are continually adopted which significantly affect individuals’ 'life or liberty’; trades and professions are subjected for the public good to complex regulations limiting the liberty to engage in such occupations, and sharp business practices are continually regulated through criminal statutes. If such legislative measures can be enacted without affording affected individuals notice and hearing, as plaintiffs concede, plaintiffs cannot reasonably contend that notice and hearing are constitutional prerequisites for zoning legislation.” (San Diego Bldg. Contrs. Assn., 13 Cal 3d 205, 213-214; emphasis in original).
The Padavan Law is not as plaintiffs see it, an unconstitutional exercise of local zoning authority by the State. It is an exercise of the State’s fundamental police power for the public good and welfare. Plaintiffs’ property is not the only property affected by the Padavan Law, nor is the Village of Kings Point the only municipality affected. The Padavan Law is an exercise of the State’s police power that sweeps from border to border, affecting all property owners and all municipalities. It is an act of general legislation and does not give rise to a requirement of notice and hearing each time a property Owner is affected by its enactment.
Further, the State or its agency, in exercising authority in furtherance of a governmental purpose, is exempt from local regulatory control (County of Westchester v Village of Mamaroneck, 22 AD2d 143, affd 16 NY2d 940). Where a zoning ordinance would have the effect of thwarting the expressed policy of the State, the zoning ordinance insofar as it conflicts *336 with the State law must yield (Abbott House v Village of Tarrytown, 34 AD2d 821). Here, the Padavan Law’s expressed intent to extend the benefits of normal residential surroundings to the mentally disabled and its definition of family unit override any conflict with the zoning ordinance of the Village of Kings Point. Thus, the definition of community residential facility as a family unit by the Padavan Law does not unconstitutionally deprive plaintiffs of their property rights. Certainly, plaintiffs have no vested right in the continuance of a particular zoning classification (Rodgers v Village of Tarrytown, 302 NY 115).
Plaintiffs also make the argument that, as applied in the facts before the court, the Padavan Law is unconstitutional because it is a taking of property by the State without just compensation.
The Padavan Law is of State-wide effect and cannot be considered a "taking” of plaintiffs’ private property. There is no taking by the State either by physical invasion of plaintiffs’ property or by direct legal restraint of its use.
The Padavan Law does not force plaintiffs’ property to serve as an access to the Cavrell property. The State has not acted to create the easement. No property was taken from plaintiffs. The right of way pre-existed the Padavan Law and was created by deed. The plaintiffs purchased their property subject to a valid easement of record. As the successor in interest to the prior owners, CMA has the clear right to use the plaintiffs’ driveway as this was a property right appurtenant to the Cavrell property. The specific terms of the easement grant CMA (without restrictions) the right to "egress and ingress” over the Zubli property’s driveway. As discussed previously, the proposed use of the Cavrell property by CMA does not violate the easement. The rights of plaintiffs are subservient to the right of CMA to use the easement. That is the nature of an easement in favor of the dominant estate (Huyck v Andrews, 113 NY 81; Pierce v Keator, 70 NY 419).
Should the value of plaintiffs’ property decrease as a result of CMA’s use this would not alter this court’s determination. CMA acquired the Cavrell property, including the easement, without taking property rights from plaintiffs. Thus, CMA’s use would be a use of contiguous property only. As a matter of law adjacent property owners are not deprived of their property because of the State’s use of a contiguous property. This is so even though the value of the property of the adjacent *337 owner is decreased (Gervasi v Board of Comrs. of Hicksville Water Dist, 45 Misc 2d 341; Matter of Brent v Hoch, 25 Misc 2d 1062).
Additionally, plaintiffs argue that the Padavan Law, as applied in the instant case, does not further a legitimate State interest and is an unreasonable exercise of the police power.
Every enactment under the police power must satisfy the test of reasonableness and must have a substantial relation to a legitimate governmental purpose (French Investing Co. v City of New York, 39 NY2d 587). Any inquiry is therefore limited to determining whether, under all of the circumstances, the legislation is reasonably related to the community policy sought to be implemented, and not unduly oppressive (People v Goodman, 31 NY2d 262).
Here, the Legislature has recognized the need to encourage a more enlightened and humane approach to the care and treatment of mentally disabled people. This need was aptly stated by Justice Di Fede in Tytell v Kaen (NYLJ, June 11, 1979, p 12, col 4, supra) in which he said, "[institutions such as the infamous Willowbrook State School on Staten Island, are now seen as destructive warehouses, little better than concentration camps which must be closed in favor of appropriate community facilities.” The State of New York had such a goal in mind when it adopted the Padavan Law. By amending the Mental Hygiene Law the Legislature expressed a public policy that the needs of the mentally disabled should be met through the concept of group homes in community settings enabling each individual an opportunity to develop capabilities with that degree of treatment, care, rehabilitation and education that he or she requires (L 1978, ch 468, § 1). The Padavan Law authorizes agencies such as CMA, under license by the State, to establish and operate these facilities.
Plaintiffs have not shown that this legislation is unreasonable or arbitrary. This is not a case involving a regulatory statute that exercises restraint or control over an individual or his property. The Padavan Law merely provides a procedure for establishing and licensing community residential facilities for those less fortunate than others. The effect of the statute on plaintiffs is merely fortuitous in that the property proposed for a group home has the benefit of an easement over the Zubli property. The State has not singled out plaintiffs’ property to provide egress and ingress to the Cavrell property nor does it expand the scope of the easement. The *338 permissive use of the easement by CMA has been determined without consideration of the Padavan Law.
The court finds that the statute meets the test of reasonableness. There is no encroachment on the exercise of private property rights without substantial relation to a legitimate governmental purpose (French Investing Co. v City of New York, 39 NY2d 587, supra).
While plaintiffs argue that the selection of the Cavrell property is inappropriate for the use intended, to wit: “mainstreaming”, and that other sites are more suitable, such a determination is not for this court but for the defendant Coughlin (Mental Hygiene Law, § 41.34, subd [a], par [4]; subd [b], par [5]; see, also, Matter of Brent v Hoch, 25 Misc 2d 1062, supra).
Plaintiffs further argue that the Padavan Law, by not amending the Village Law, is defective.
The Padavan Law specifically amends the Eminent Domain Procedure Law so as to obviate the necessity for notice and hearing when a site is condemned for the purpose of establishing a community residential facility (L 1978, ch 468, § 3). Plaintiffs contend that in failing to include a similar amendment to the Village Law the Padavan Law (by defining community residential facilities as family units) purports to implement changes in local zoning ordinances without notice and hearing as required by the Village Law.
Plaintiffs misconstrue the plain meaning of the Village Law as being applicable to and coextensive with the Padavan Law. Article 7 of the Village Law empowers villages to enact and implement comprehensive zoning plans. Once enacted, local zoning ordinances may not be changed or amended by the municipality without complying with the prescribed notice and hearing requirements (Village Law, §§ 7-706, 7-708, 21-2100, 21-2102). Thus, for example, if the Village of Kings Point seeks to change the minimum frontage requirements for building lots in a particular zoned district the appropriate notice would have to be given, followed by a public hearing. However, such is not the case in this instance.
The notice and hearing requirements of the Village Law are applicable only when the municipality itself proposes the change or amendment. The Padavan Law, to the extent that it affects local zoning ordinances, is not within the requirements of the Village Law. It was duly enacted by the State Legislature and signed into law by the Governor. The Village Law *339 does not require any notice and hearing in this instance. Only if the change or amendment were to originate at the village level would notice and hearing be required. Since the Padavan Law is a statute enacted in Albany and of State-wide application, notice and hearing are not required.
CONCLUSION
 While this court is not unmindful of the concerns of plaintiffs in having the neighboring Cavrell property converted to a community residential facility for the mentally disabled, nevertheless, this action must be dismissed. The easement does not preclude a change in use of the Cavrell property and was created to benefit it, regardless of its use. Further, the Legislature has deemed it appropriate to codify a public policy of providing the mentally disabled with an opportunity to live, not in institutional isolation, but in community interaction.
In accordance with the foregoing, it is the decision of this court to grant the defendants’ respective motions to dismiss the complaint and for summary judgment. Plaintiffs’ cross motion for permanent injunction is denied.