*891 OPINION OF THE COURT
Herbert Kramer, J.
In this CPLR article 78 proceeding, petitioners move, by order to show cause, for an order: (1) declaring illegal respondents’ failure to comply with the procedural requirements of the Eminent Domain Procedure Law and the Environmental Conservation Law, and vacating the acquisition of the premises by the State of New York and its subsequent transfer of the premises to respondent Postgraduate Center for Mental Health, Inc. (Postgraduate), (2) declaring illegal respondents’ failure to comply with sections 203 and 204 of the New York City Charter with respect to the disposition of the premises for the purpose of constructing the facility at issue, and (3) preliminarily and permanently enjoining respondents from taking any further action with respect to the proposed construction of said facility.
Respondents Mayor Rudolph W. Guliani, Barbara J. Sabol, Louis R. Marcos, Richard L. Shaffer, and Marilyn Gelber (hereinafter collectively referred to as the City respondents) and respondent Postgraduate separately cross-move for an order, pursuant to CPLR 7804 (f), dismissing the petition on the ground that it fails to state a cause of action. Respondents Governor Mario M. Cuomo, Richard C. Surles, Thomas C. Jorling, and Facilities Development Corp. (hereinafter collectively referred to as the State respondents) cross-move for an order, pursuant to CPLR 3211 (a) and 7804 (f), dismissing this proceeding or, alternatively, changing the venue of this proceeding to Albany County pursuant to CPLR 511 and McKinney’s Unconsolidated Laws of NY § 4412 (Facilities Development Corporation Act [FDC Act] § 12; L 1968, ch 359, § 1, as amended).
Petitioners are various State and local legislators as well as community associations and individual area residents. They seek to enjoin the construction of a facility which would be located at 169-177 Columbia Street in Brooklyn, New York. Such proposed facility would be developed and operated by Postgraduate under a program administered by the New York State Office of Mental Health (OMH) for use as a 56-single-room-occupancy community residence for homeless low-functioning mentally ill individuals requiring on-site supportive services.
*892 The property upon which the proposed facility would be located was originally owned by the City of New York. On August 22, 1990, the City and the State of New York entered into an agreement (the NY/NY agreement) relating to the development of housing for the homeless mentally ill in New York City. Community Board 6 (the Community Board whose district includes the area where the facility would be located) voted in the summer of 1991 to approve site control for the facility for only 21 units of housing for the mentally ill. Site control was necessary in order to allow Postgraduate, the sponsor of the facility, to proceed with its application for a City-funded mental health facility. Petitioners allege that it was the Board’s understanding and the representation of Postgraduate that the development of the facility was subject to the Uniform Land Use Review Procedure (ULURP) as required by section 197-c of the New York City Charter, and that Postgraduate would return to the Board for further review as the project moved forward.
The requirements of ULURP, however, were not complied with. Instead, on July 17, 1992, the City, rather than transferring the Columbia Street property directly to Postgraduate, entered into an amended memorandum of understanding with the State whereby it agreed to the acquisition of the property by the State by way of eminent domain. The State of New York, acting by and through OMH and its agent, the Facilities Development Corp. (FDC) then acquired the property upon which the facility would be located by a "friendly condemnation” pursuant to the Eminent Domain Procedure Law. By deed filed in the Kings County Clerk’s office in November 1993, FDC transferred title to said property to Postgraduate.
Petitioners argue, inter alla, that respondents’ failure to comply with the requisite ULURP procedures renders the acquisition of the property at issue illegal. They seek, in their petition, a declaration of such illegality, a vacatur of the transfer of title to the property to the State and to Postgraduate, and a preliminary and permanent injunction enjoining respondents from taking any further action with respect to constructing the proposed facility. Since respondents have not yet answered the petition, only the preliminary injunction motion, all of the respondents’ cross motions to dismiss the petition, and the State respondents’ alternative cross motion for a change of venue are presently before the court.
Respondents, in support of their cross motions, argue that the petition is time barred pursuant to Mental Hygiene Law *893 §41.34 (d), which provides that "[r]eview of a decision rendered by a commissioner pursuant to this section may be had in a proceeding pursuant to article seventy-eight of the civil practice law and rules commenced within thirty days of the determination of the commissioner.”
Petitioners, in this proceeding, however, do not challenge any specific determination by the Commissioner, per se, but instead seek an adjudication that respondents lacked the requisite jurisdiction to act in this matter when respondents failed to submit to a ULURP review in connection with the granting of local approval of the project by the City. Thus, the four-month Statute of Limitations for article 78 proceedings as set forth in CPLR 217 rather than the 30-day Statute of Limitations of Mental Hygiene Law § 41.34 (d) is applicable to this proceeding (see, Community Bd. 3 v State of New York, 101 Misc 2d 189, 191). Since this proceeding was brought within four months from the November 15, 1993 public meeting when petitioners were first informed that the State had taken title by condemnation and had transferred such title to Postgraduate, and that respondents did not intend to submit to a ULURP review, it was timely brought (see, CPLR 217).
In addressing the State respondents’ cross motion insofar as it seeks a change of venue to Albany County, the court notes that section 4412 (1) of McKinney’s Unconsolidated Laws of NY (FDC Act § 12 [1]) provides that ”[t]he venue of any action, suit or special proceeding brought against [FDC] shall be laid in the county of Albany.” It has been held that in the absence of compelling circumstances, courts should comply with this statutory directive (Seaboard Sur. Co. v Facilities Dev. Corp., 100 AD2d 787, 788). However, where there are compelling circumstances such as where the convenience of witnesses and the ends of justice would be promoted by retention of a proceeding in the county selected by petitioners, a departure from the mandate of this section is warranted (see, Kroupa v Facilities Dev. Corp., 157 AD2d 650; Seaboard Sur. Co. v Facilities Dev. Corp., supra, at 787-788).
In the case at bar, petitioners are all based in Kings County, the property at issue is located in Kings County, and the respondent developer is in Kings County. Respondent City of New York and its various respondent agencies are located in New York City. The New York State Law Department, which represents the State respondents, has offices in New York City, the New York City Law Department is in the City of *894 New York, and petitioners’ prime witnesses are residents of Kings County.
In view of these circumstances, the court finds that the instant litigation bears a much closer nexus to Kings County than it does to Albany County, and the ends of justice will be served by retaining this proceeding in Kings County. Thus, the State respondents’ cross motion insofar as it seeks a change of venue to Albany County must be denied.
In turning to petitioners’ motion for a preliminary injunction and respondents’ cross motions insofar as they seek dismissal of the petition for failure to state a cause of action, the court notes that section 197-c (a) (10) of the New York City Charter, in pertinent part, provides:
"§ 197-c. Uniform land use review procedure, a. Except as otherwise provided in this charter, applications by any person or agency for changes, approvals, contracts, consents, permits or authorization thereof, respecting the use, development or improvement of real property subject to city regulation shall be reviewed pursuant to a uniform review procedure in the following categories * * *
"(10) Sale, lease (other than the lease of office space), exchange, or other disposition of the real property of the city” (emphasis supplied).
Here, the project involves the "use, development or improvement of real property.” Respondents argue, however, that it does not involve the "disposition of the real property of the city” pursuant to section 197-c (a) (10) because the property was acquired by the State through condemnation. The court rejects this argument. The City consented to the condemnation and, in fact, contracted for the disposition of the property under the NY/NY agreement and the City’s amended memorandum of understanding with the State of New York.
The court also notes that the City did not receive a fair compensation for the property at issue. The amended memorandum of understanding provided that "the City has agreed to permit OMH to acquire the Sites for One Dollar ($1.00) per Site.” Such acquisition, therefore, was permitted without reference to the fair market value of the property. Additionally, according to OMH’s Residential Program Development Manual, payment of the $1 purchase price was waived by the City. The consent of the City to permit acquisition of the sites for $1 each thus constitutes a voluntary "disposition of the real *895 property of the city” pursuant to New York City Charter § 197-c (a) (10). Consequently, the City’s agreement with the State pursuant to which the State acquired the subject property required the City’s compliance with ULURP procedures.
Respondents further argue that even if the project at issue is within the type of land use activity to which ULURP would apply, the City was not required to comply with ULURP because FDC acquired the property and it, as an agency of the State, in exercising its authority in furtherance of a governmental purpose, is exempt from local regulatory control. This argument is unavailing. Gedney Assn. v State of N. Y. Dept. of Mental Hygiene (112 Misc 2d 209), relied upon by respondents in support of this argument, involved property which was already owned by the State. It did not involve circumstances where, as here, the property was originally owned by the City and the City was a party to the transaction transferring title to the State. The case at bar also does not involve a local ordinance which directly conflicts with State law (see, Zubli v Community Mainstreaming Assocs., 102 Misc 2d 320, 335-336, affd 74 AD2d 624, mod on other grounds 50 NY2d 1024).
Respondents also rely upon Matter of Waybro Corp. v Board of Estimate (67 NY2d 349) and East Thirteenth St. Community Assn. v New York State Urban Dev. Corp. (189 AD2d 352) in support of their contention that FDC has the right to override local laws and that compliance with ULURP was, therefore, unnecessary. Such reliance is misplaced. In those cases, the acquiring State agency was not FDC, but the New York State Urban Development Corporation (UDC). The FDC Act, which is applicable here, and the New York State Urban Development Corporation Act (UDC Act) are different in scope and intent.
Section 16 (3) of the UDC Act (McKinney’s Uncons Laws of NY § 6266 [3]; L 1968, ch 174, § 1, as amended) requires UDC "and any subsidiary thereof * * * in constructing, reconstructing, rehabilitating, altering or improving any project, [to] comply with the requirements of local laws, ordinances, codes, charters or regulations applicable * * * [except] when, in the discretion of [UDC], such compliance is not feasible or practicable” (emphasis supplied). In addition, subdivision (6) of this section authorizes UDC to enter into contracts with municipalities, and provides that "any municipality * * * is hereby authorized and empowered, notwithstanding any other law, to *896 enter into such contractual agreements with [UDC]” (emphasis supplied).
The Court of Appeals, in Waybro (supra, at 355), held that " 'any other law’ as used in subdivision (6) must be construed in light of subdivision (3)’s reference to 'charters’ to encompass a charter provision such as ULURP.” It thus held that pursuant to these subdivisions, UDC had the power to override requirements of local charters, making compliance with ULURP unnecessary (supra).
No similar provisions authorizing the avoidance of complying with local laws and charters exist in the FDC Act. Additionally, the court notes that section 4409 (1) (b) of McKinney’s Unconsolidated Laws of NY (FDC Act § 9 [1] [b]) provides: "b. The directors of the corporation shall prepare or cause to be prepared for the state housing finance agency * * * within the amounts appropriated therefor or otherwise available, the building plans, the exterior drawings or models displaying the architectural concept of each mental hygiene facility thereafter to be constructed, reconstructed, rehabilitated or improved, and the detailed plans and specifications for all such construction, reconstruction, rehabilitation and improvement work to be performed, all of which shall be subject to the separate approval of the appropriate commissioner of the department and, in the case of community mental health and retardation facilities, of the governing body of the city or county or of such officer, department, agency or community mental health board as may be designated by such governing body for the purpose of such approval” (emphasis supplied; see also, Montgomery v State of New York, 69 Misc 2d 127, 134, affd 43 AD2d 552).
While respondents argue that this section applies to matters relating to construction rather than the acquisition of property, the court notes that no provision requiring prior local governmental approval similar to McKinney’s Unconsolidated Laws of NY § 4409 (1) (b) (FDC Act § 9 [1] [b]) is to be found in the UDC Act. Due to these significant differences in the scope and intent of the UDC and FDC Acts, the court finds that the case law dealing with UDC is not relevant or applicable to the case at bar.
Respondents’ further contention that ULURP as applied in this proceeding violates the Federal Fair Housing Act (42 USC §§ 3604, 3617), which prohibits housing discrimination against individuals who are handicapped, is without merit. *897 ULURP is only a process for review and does not dictate a particular result. Thus, the issue of the Federal Fair Housing Act is not applicable until after the ULURP procedure has been followed. Furthermore, while it is possible that a community could utilize its review as a method of discriminating against particular property uses within its jurisdiction, no such discrimination is evident in this case. In fact, as noted above, the Community Board unanimously approved site control for a 21-unit project for the mentally ill.
The court finds that petitioners have sufficiently satisfied the requirements for a preliminary injunction (see, Grant Co. v Srogi, 52 NY2d 496, 517). Since the City failed to comply with the requirements of ULURP, petitioners have demonstrated a likelihood of success on the merits. A balancing of the equities also favors petitioners. Respondents may not utilize the condemnation process as a mechanism to avoid compliance with local laws, i.e., ULURP, and to bypass any meaningful formal community review. Petitioners have also demonstrated that they will be irreparably harmed if the preliminary injunction is not granted. Where the community’s role is limited to recommendation, it is essential that it be empowered to make its recommendations at the very beginning of the land use review process before an action is implemented.
The court has considered respondents’ remaining contentions in opposition to petitioners’ motion for a preliminary injunction and find them to be without merit.
Accordingly, petitioners’ motion is granted to the extent that it seeks a preliminary injunction enjoining respondents from taking any further action with respect to the proposed construction of the facility pending compliance with the requirements set forth in ULURP. Petitioners shall post an undertaking in an amount to be fixed in the order to be entered hereon (CPLR 6312 [b]). Upon settlement of the order, the parties may submit recommendations as to the amount of the undertaking to be fixed. Petitioners’ motion is denied as premature in all other respects since respondents have not yet answered the petition (CPLR 7804 [d], [f]). All of the respondents’ cross motions to dismiss the petition and the State respondents’ alternative cross motion for a change of venue are hereby denied.