Dinesh **MEHTA** and Pravina Mehta, Plaintiffs,

v.

Richard C. **SURLES** as Commissioner of the Office of Mental Health of the State of New York, The State of New York and Futura House Foundation, Inc., Defendants.

No. 89 Civ. 3697 (GLG).

United States District Court, S.D. New York.

Aug. 29, 1989.

Rose and Koerner (Ronald J. Koerner, of counsel), Brooklyn, N.Y., for plaintiffs.

Robert Abrams, Atty. Gen., State of N.Y. (Robert L. Schonfeld, of counsel), New York City, for defendants Richard C. Surles and the State of N.Y.

Campbell, McMillan, Bosco, Penzel, Danzig & Maker (William Maker, Jr., of counsel), New Rochelle, N.Y., for defendant Futura House Foundation, Inc.

### OPINION

GOETTEL, District Judge:

Although we are all too familiar with the attitude embodied in the acronym "NIMBY" ("Not In My BackYard"), this case presents an unusual scenario more appropriately called "NIMDY" ("Not In My DrivewaY"). The plaintiffs, Dinesh and Pravina Mehta, are the owners in fee of premises located at 367 Old Army Road, Scarsdale, New York. Their property shares a common driveway with the adjacent premises located at 371 Old Army Road and is burdened with an easement for ingress and egress running to the residents of 371 Old Army Road. 371 Old Army Road has been purchased by the defendant Futura House Foundation, Inc.[1] for the purpose of establishing a community residence for mentally disabled persons. The plaintiffs assert a host of constitutional challenges to the process by which this location was selected. The plaintiffs' primary contention is that use of the common driveway by the members of the community residence will exceed the scope of the easement granted to the residents of 371 Old Army Road, resulting in a taking of their property without just compensation. The defendants have moved to dismiss the

complaint and the plaintiff has cross-moved for summary judgment.

### I. *Facts*

In 1962 or 1963, Model Homes of Westchester, Inc. ("Model Homes"), the owner and developer of a parcel of land in Scarsdale, New York, subdivided the property now known as 367 and 371 Old Army Road, Scarsdale, New York. Incident to the development, Model Homes constructed a common driveway to be used by the owners of 367 and 371 Old Army Road.[2] Subsequent conveyance of both parcels of land by Model Homes to the original owners included in the deed "an easement of right-of-way in common with others over Edgemont Circle, as shown on said map for ingress and egress to and from the above premises and Old Army Road." Ronald J. Koerner, Esq. Affidavit Exhibit 6–7.[3] The plaintiffs acquired the premises located at 367 Old Army Road in April 1979.

In or about April 1988, defendant Futura House Foundation, Inc. ("Futura House") contracted with Jae Ryang Kim and Byung Soon Kim to purchase the house and property known as 371 Old Army Road. Futura House intended to use the premises for the construction of a community residence for mentally disabled persons. Pursuant to New York Mental Hygiene Law section 41.34,[4] in October 1988 Futura House notified the supervisor of the Town of Greenburgh of its interest in establishing the proposed community residence.[5] The Town

---

1. Futura House is a not-for-profit corporation organized under the laws of the State of New York.

2. Two surveys made of the subject properties reach different conclusions as to the extent to which the driveway lies on each property. One survey, annexed to the Complaint as Exhibit 2, indicates that the paved portion of the driveway is fifteen feet in width and that 6.9 feet lie on 371 Old Army Road. Another survey, annexed to the Complaint as Exhibit 3, also establishes the driveway as fifteen feet wide but measures 7.7 feet on 371 Old Army Road. This differential is irrelevant to our analysis because both parties concede that the greater portion of the driveway rests on the plaintiffs' property.

3. The plaintiffs contend that the easement was intended to be used only by a single family residence. Although the plaintiffs offer the affi-

davits of the original owners of 367 and 371 Old Army Road attesting to that limitation, no express limitations on the scope of the easement can be found.

4. Section 41.34 of the Mental Hygiene Law is alternatively referred to as the Padavan Law. N.Y.Mental Hyg.Law § 41.34 (1988).

5. Section 41.34 of the Mental Hygiene Law governs the procedure utilized for the selection of sites for community residences for mentally disabled persons and provides as follows:

   When a site has been selected by the sponsoring agency, it shall notify the chief executive officer of the municipality in writing and include in such notice the specific address of the site, the type of community residence, the number of residents and the community support requirements of the program.... The

of Greenburgh then proposed alternative sites for the community residence that were unacceptable to Futura House. Consequently, on February 15, 1989 and February 24, 1989, a hearing was held before a hearing officer designated by the defendant Richard C. Surles, Commissioner of the Office of Mental Health of the State of New York (the "Commissioner"). The Town of Greenburgh and Futura House were the only parties to that proceeding.[6] On or about March 29, 1989, Commissioner Surles issued a determination that Futura House's proposed site was superior to the sites proposed by the Town of Greenburgh, thereby making it possible for Futura House to commence the operation of a community residence at 371 Old Army Road. On April 14, 1989, Futura House took title to 371 Old Army Road.

## II. *State Court Proceedings*

Within 30 days of the Commissioner's determination, the plaintiff Dinesh Mehta, together with a neighborhood association and another neighboring homeowner, commenced an Article 78 proceeding in Supreme Court, Westchester County seeking to annul the Commissioner's ruling. The complaint alleged that the Commissioner's determination violated the plaintiff's right to due process under Article 1, sections 6 and 11 of the New York Constitution and further alleged that section 41.34 of the New York Mental Hygiene Law was violative of the New York Constitution. The plaintiff expressly reserved his federal claims for review by a federal court. On June 2, 1989, the court ruled that Dinesh

Mehta lacked standing to challenge the Commissioner's determination in an Article 78 proceeding. The court further dismissed the plaintiff's due process claim on the ground that the proceedings under section 41.34 did not deprive him of due process rights. Finally, the court transferred the remaining claims and parties to the Appellate Division, Second Department.

Plaintiffs Dinesh and Pravina Mehta, along with two other neighbors, also commenced an independent action in Supreme Court, Westchester County against Futura House seeking a declaration that Futura House's use of its property would result in a trespass of the plaintiffs' property and an injunction barring Futura House from establishing a community residence on its property. On May 23, 1989, Justice W. Denis Donovan of the Supreme Court, Westchester County denied the plaintiffs' motion for a preliminary injunction, finding that the plaintiffs' had failed to establish a likelihood of success on the merits or irreparable harm. Further proceedings on the merits of that case are pending.

## III. *The Federal Complaint*

On May 26, 1989, the plaintiffs initiated suit in federal court, asserting federal constitutional rights via section 1983 of the Civil Rights Act of 1871. 42 U.S.C. § 1983 (1981). Their complaint contains seven causes of action and nine claims for relief. The first cause of action alleges that use of the common driveway by a community residence will constitute a taking without just compensation or due process in violation of

---

municipality shall have forty days after the receipt of such notice to: (A) approve the site recommended by the sponsoring agency; (B) suggest one or more suitable sites within its jurisdiction which could accommodate such a facility; or (C) object to the establishment of a facility of the kind described by the sponsoring agency because to do so would result in such a concentration of community residential facilities for the mentally disabled in the municipality or in the area in proximity to the site selected or a combination of such facilities with other community residences or similar facilities licensed by other agencies of state government that the nature and character of the areas within the municipality would be substantially altered.

N.Y.Mental Hyg.Law § 41.34(c)(1) (1988). If the municipality and the sponsoring agency cannot agree on a location for the community residence, either party can request an immediate hearing before the commissioner of the office of the department responsible for issuance of licenses and operating certificates to the proposed community residence. *Id.* at § 41.34(c)(5).

**6.** Although not a party to the proceedings, the plaintiff Dinesh Mehta was called as a witness at the hearing by the Greenburgh Town Attorney and testified that the proposed community residence would unduly intrude upon his property rights. *See* Notice of Motion, Exhibit A.

the fifth and fourteenth amendments to the United States Constitution.[7] That count also charges that section 41.34 of the Mental Hygiene Law is unconstitutional as applied. The second cause of action alleges that the municipality's decision to place the community residence adjacent to the Mehta's property and the resultant decrease in their property value is a taking without just compensation in violation of the fifth and fourteenth amendments. This count similarly charges that section 41.34 is unconstitutional as applied. The third cause of action alleges that section 41.34 is unconstitutional because it does not provide the plaintiffs with notice and a right to be heard in the determination of site location for community residence. The fourth cause of action alleges a denial of due process due to the plaintiffs' inability to challenge the granting of zoning variances to Futura House. The fifth cause of action alleges that the Office of Mental Health violated an unwritten policy not to approve facilities that have common driveways. It is alleged that this departure from policy violated the plaintiffs' fourteenth amendment right to be free from arbitrary governmental action. The sixth cause of action contends that section 41.34 is not rationally related to its legislative objective because it does not contain any guidelines for an administrator to differentiate between forms of social pathology and retardation. Thus, the sixth cause of action alleges that the actions of defendant Surles were an unreasonable exercise of police powers. Finally, the seventh cause of action challenges the site selection hearing as violative of the fourteenth amendment because it imposed an incorrect burden of proof on the Town of Greenburgh and because it considered evidence that should not have been admitted. The plaintiffs seek declaratory and injunctive relief as well as attorneys fees and costs. The defendants have moved to dismiss the action for failure to state a claim upon which relief can be granted.

## IV. *Abstention*

■ Initially, the defendants urge this court to abstain from exercising jurisdiction over the plaintiffs' claims under either the *Younger* or *Pullman* abstention doctrines. The abstention doctrine initiated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is appropriate when there is an ongoing state proceeding involving important state interests in which the plaintiff will have an adequate opportunity for review of his constitutional claims either during or after the state proceeding. *University Club v. City of New York*, 842 F.2d 37, 40 (2d Cir.1988). Unlike the paradigmatic *Younger* abstention case, the plaintiffs are not seeking to enjoin or otherwise interfere with a pending state action. The only ongoing state proceeding in which the plaintiffs are participants is the real property action brought pursuant to Article 15 of the Real Property Actions and Proceedings Law.

> The relief available in such an action ... includes declaration of the validity or invalidity of any claim to the subject real estate asserted by any party to the action, cancellation or reformation of instruments giving rise to any purported interest in the premises, an award of possession of the property, and damages sustained by reason of the withholding of any property interest established.

*Hurley v. Hurley*, 50 N.Y.2d 78, 82, 427 N.Y.S.2d 986, 988, 405 N.E.2d 229, 230 (1980). Although there appears to be no express bar to asserting federal constitutional claims in an Article 15 proceeding, it is unclear whether the Article 15 court has jurisdiction to award the plaintiffs the extensive relief they seek. In sum, we think this case an improper candidate for *Younger* abstention.

■ *Pullman* abstention is similarly inapplicable. The *Pullman* doctrine, established in *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971

---

7. The fifth amendment of the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. The fourteenth amendment of the United States Constitution provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

(1941), requires "that the state statute be unclear or the issue of state law be uncertain, that resolution of the federal issue depend upon the interpretation to be given to the state law, and that the state law be susceptible of an interpretation that would avoid or modify the federal constitutional issue." *McRedmond v. Wilson*, 533 F.2d 757, 761 (2d Cir.1976) (citations omitted). This case lacks an uncertain question of state law. In *Zubli v. Community Mainstreaming Assoc.*, 102 Misc.2d 320, 423 N.Y.S.2d 982, 994 (Sup.Ct.1979), *aff'd* 74 A.D.2d 624, 425 N.Y.S.2d 263 (2d Dep't), *aff'd as modified* 50 N.Y.2d 1024, 431 N.Y. S.2d 813, 410 N.E.2d 746 (1980), the New York courts squarely affirmed the constitutionality of section 41.34.[8] *Pullman* abstention is inappropriate in the absence of an unsettled question of state law. The mere possibility that a favorable determination in state court will obviate the need for federal consideration of the plaintiffs' federal claims is insufficient reason to invoke *Pullman* abstention. *McRedmond v. Wilson*, 533 F.2d 757, 761–62 (2d Cir.1976). Consequently, we decline to abstain from exercising our jurisdiction in this action. For the reasons that follow, however, we nevertheless grant the defendants' motion to dismiss the complaint.

## V. *State Action*

As stated by the Supreme Court in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986):

> in any § 1983 action the initial inquiry must focus on whether the two essential elements of a § 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.

*Id.* at 535, 101 S.Ct. at 1913. Thus, as a threshold matter, we must determine whether the challenged conduct was committed by a person acting under color of state law. The plaintiffs contend that the property deprivation they have suffered[9] was caused by the Commissioner's determination that 371 Old Army Road was an acceptable location for a community residence. Clearly, defendant Surles, acting in his official capacity as Commissioner of the Office of Mental Health of the State of New York is a state actor. More troublesome, however, is defendant Futura House. The plaintiffs contend that Futura House's utilization of the process established by section 41.34 of the Mental Hygiene law to secure 371 Old Army Road for a community residence, its receipt of a grant from New York State to implement its plans, and its obtainment of zoning variances make Futura House a state actor. A private person may be found to be a state actor either "because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982). An argument could be made that Futura House became a joint actor with the state upon receipt of grant funds and administrative approval to proceed with the institution of a community residence. *Compare Tulsa Professional Collection Serv., Inc. v. Pope*, 485 U.S. 478, 108 S.Ct. 1340, 1345, 99 L.Ed.2d 565 (1988) (state action found "when private parties make use of state procedures with the overt, significant assistance of state officials") *with Jones v. Deutsch*, 715 F.Supp. 1237, 1248–50 (S.D.N.Y.1989) (use by private citizens of the state-sanctioned village incorporation process did not create state action in absence of a meaningful measure of state participation in or support of the acts complained of). This is a difficult question of constitutional magnitude that we need not reach. Our conclusion that the plaintiffs have failed to assert a cognizable property deprivation renders resolution of this issue unnecessary.

---

**8.** For a complete discussion of the *Zubli* case, see *infra* Part VI.B.

**9.** For a discussion of the plaintiffs' claimed property deprivations, see *infra* Part VI.

## VI. *Property Deprivation*

The next inquiry in the *Parratt* analysis is whether the alleged conduct deprived the plaintiff of a right secured by the United States Constitution. As aptly stated by counsel for the plaintiffs,

[t]he validity of Plaintiffs' attack on the constitutionality of § 41.34 of the Mental Hygiene Law (MHL) as applied, and the vindication by the Plaintiffs of their rights as guaranteed by the Fifth and Fourteenth Amendments, *are dependent upon the fundamental proposition that there was a 'taking' of private property* by the actions of the State and its licensee and agents by virtue of § 41.34 MHL.

Plaintiffs' Memorandum of Law at 4 (emphasis added). When the plaintiff's constitutional claim is pegged to a property right, the second prong of the *Parratt* test requires the following inquiry: "(a) whether a property right has been identified; (b) whether governmental action with respect to that property right amounts to a deprivation; and (c) whether the deprivation, if one be found, was visited upon the plaintiff without due process of law." *Fusco v. State of Connecticut,* 815 F.2d 201, 205 (2d Cir.) (citing *Parratt v. Taylor,* 451 U.S. at 536–37, 101 S.Ct. at 1913–14), *cert. denied,* 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987).

### A. Market Value

■ The Complaint may be read as asserting two distinct property interests. The plaintiffs assert that they have suffered a property deprivation because the Commissioner's determination that 371 Old Army Road was a suitable location for a community residence has caused and will continue to cause the market value of their property to decrease. Mere diminution in property value, however, is recognized neither as a fourteenth amendment property deprivation nor a fifth amendment taking. *See Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 131, 98 S.Ct. 2646, 2663, 57 L.Ed.2d 631 (1978) (Supreme Court

decisions "uniformly reject the proposition that diminution in property value, standing alone, can establish a 'taking.' "); *Fusco v. Connecticut,* 815 F.2d 201, 206 (2d Cir.) (claimed decrease in value of property "failed to allege a *deprivation* cognizable under the fourteenth amendment" (emphasis in original)), *cert. denied,* 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987); *BAM Historic District Assoc. v. Koch,* 723 F.2d 233, 237 (2d Cir.1983) ("Governmental action of that sort has never been held to 'deprive' a person of property within the meaning of the Fourteenth Amendment."); *Sachetti v. Blair,* 536 F.Supp. 636, 641 (S.D.N.Y.1982) (diminution in property value will not support fifth or fourteenth amendment claim); *Zubli v. Community Mainstreaming Assoc.,* 102 Misc.2d 320, 423 N.Y.S.2d 982, 994 (Sup.Ct.1979) ("As a matter of law adjacent property owners are not deprived of their property because of the State's use of a contiguous property ... even though the value of the property of the adjacent owner is decreased."), *aff'd* 74 A.D.2d 624, 425 N.Y.S.2d 263 (2d Dep't), *aff'd as modified* 50 N.Y.2d 1024, 431 N.Y.S.2d 813, 410 N.E.2d 746 (1980). Consequently, to the extent that the plaintiffs' claims rest upon an alleged decrease in their property value, those claims must fail.

### B. Easement Rights

■ The property deprivation next asserted by the plaintiffs is that use of the common driveway by Futura House residents will result in an overuse of the easement granted to residents of 371 Old Army Road. Thus, they contend, the Commissioner's determination that 371 Old Army Road was an appropriate location for a community residence constituted a taking of property without just compensation. This precise issue was addressed by the New York courts in *Zubli v. Community Mainstreaming Assoc.,* 102 Misc.2d 320, 423 N.Y.S.2d 982 (Sup.Ct.1979), *aff'd* 74 A.D.2d 624, 425 N.Y.S.2d 263 (2d Dep't), *aff'd as modified* 50 N.Y.2d 1024, 431 N.Y.S.2d 813, 410 N.E.2d 746 (1980).[10]

---

**10.** The text of the *Zubli* opinion fails to specify whether it was decided pursuant to federal or state constitutional due process principles. A principal case relied upon and adopted by the

In *Zubli*, as in this action, the plaintiffs were the owners of a parcel of real property that shared a common driveway with property intended to be used for a community residence for mentally disabled persons. The easement at issue had been expressly reserved by the original owner of the two parcels of land "for egress and ingress." *Id.* 423 N.Y.S.2d at 986. The easement was not otherwise limited, although the plaintiffs argued that it was intended only for use by a single family. *Id.* 423 N.Y.S.2d at 989. An action was initiated in state court alleging that use of the driveway by the community residence violated the terms of the easement, that a determination by the Commissioner of the Office of Mental Health permitting the operation of a community residence violated the plaintiffs' constitutional rights and that section 41.34 of the Mental Hygiene Law was unconstitutional as applied. *Id.* 423 N.Y.S.2d at 986. After making the initial determination that section 41.34 was facially constitutional, *id.* 423 N.Y.S.2d at 990–93, the court analyzed the plaintiffs' challenge to the statute's constitutionality as applied.

The *Zubli* plaintiffs argued that the Commissioner's determination that their neighbor's property was an acceptable location for a community residence constituted a taking without just compensation. Specifically they argued, as do the plaintiffs herein, that use of the driveway by the community residence would exceed the scope of the easement over the common driveway. In rejecting this proposition, the court stated that:

> The Padavan Law [N.Y. Mental Hyg. Law § 41.34] is of statewide effect and cannot be considered a "taking" of plaintiffs' private property. There is no taking by the State either by physical invasion of plaintiffs' property or by direct legal restraint of its use.
>
> The Padavan Law does not force plaintiffs' property to serve as an access to the [neighboring] property. The State has not acted to create the easement. No property was taken from the plaintiffs. The right of way preexisted the Padavan Law. . . .

*Id.* 423 N.Y.S.2d at 993–94.

We find the reasoning of the *Zubli* court persuasive. The actions of the Commissioner in selecting 371 Old Army Road as the more appropriate site for a community residence did not create a physical invasion or occupation of the plaintiffs' property. The easement created by Model Homes far preceded the Commissioner's determination.[11] Thus, the defendants' actions did

---

*Zubli* court, however, was grounded in the fourteenth amendment of the United States Constitution. *See San Diego Bldg. Contractors Ass'n v. City Council of San Diego*, 13 Cal.3d 205, 118 Cal.Rptr. 146, 529 P.2d 570 (1974), *appeal dismissed*, 427 U.S. 901, 96 S.Ct. 3184, 49 L.Ed.2d 1195 (1976).

We note that the relevant provisions of the federal and state constitutions are virtually identical. *Compare* U.S. Const. amend. V ("nor shall private property be taken for public use, without just compensation") *and* U.S. Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law") *with* N.Y. Const. art. 1, § 7 ("Private property shall not be taken for public use without just compensation.") *and* N.Y. Const. art. 1, § 6 ("No person shall be deprived of life, liberty or property without due process of law."). Indeed, as stated by the New York Court of Appeals, "[t]he [due process] clauses are formulated in the same words and are intended for the protection of the same fundamental rights of the individual and there is, logically, no room for distinction in definition of the scope of the two clauses." *Central Sav-*

ings Bank v. City of New York*, 280 N.Y. 9, 10, 19 N.E.2d 659 (1939), *cert. denied*, 306 U.S. 661, 59 S.Ct. 790, 83 L.Ed. 1058 (1939). To the extent that the provisions may have diverged in the interim years of constitutional interpretation and reinterpretation, the New York State Constitution has consistently been given a broader interpretation than its federal counterpart, "affording the rights and liberties of the citizens of [New York] State even more protection than may be secured under the United States Constitution." *Sharrock v. Dell Buick–Cadillac, Inc.*, 45 N.Y.2d 152, 159, 408 N.Y.S.2d 39, 43, 379 N.E.2d 1169, 1172 (1978) (citing cases). Accordingly, we consider the decision of the *Zubli* court persuasive authority.

11. The easements referred to in the deeds to the original owners of 367 and 371 Old Army Road do not contain any express limitations. The plaintiffs offer the affidavits of the original owners to attest to the fact that the easement over the common driveway was intended to be limited to use by a single family. We do not attempt to resolve this matter as it is an issue more appropriately reserved for the state courts. *See infra.*

not involve an affirmative taking of any of the plaintiffs' property interests.

The plaintiffs argue that the Commissioner's determination creates an invasion of their property rights akin to that found by the Supreme Court to be a taking in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982). In *Loretto*, the Court held that the installation of approximately 36 feet of cable and two $4'' \times 4'' \times 4''$ metal boxes on the roof of the plaintiff-landlord's building created a "permanent physical occupation authorized by government" resulting in a taking without just compensation. *Id.* at 426, 102 S.Ct. at 3171. Although, as the dissent maintained, the invasion was arguably *de minimis*, the Court nonetheless held that a permanent physical invasion of private property is "qualitatively more intrusive than perhaps any other category of property regulation," *id.* at 441, 102 S.Ct. at 3179, and constitutes a *per se* taking.[12]

The analogy to *Loretto*, however, is far from perfect. The Court defined a permanent physical occupation as "[t]he placement of a fixed structure on land or real property." *Id.* at 437, 102 S.Ct. at 3177. Thus, a permanent physical occupation is one which effectively destroys three fundamental property rights.

> First, the owner has no right to possess the occupied space himself and also has no power to exclude the occupier from possession and use of the space.... Second, the permanent physical occupation of property forever denies the owner any power to control the use of the property; he not only cannot exclude others, but can make no nonpossessory use of the property.... Finally, even though the owner may retain the bare legal right to dispose of the occupied space by transfer or sale, the permanent occupation of that space by a stranger will ordinarily empty the right of any value, since the purchaser will also be unable to make any use of the property.

*Loretto*, 458 U.S. at 435–36, 102 S.Ct. at 3176. The invasion cited by the plaintiffs simply does not rise to the level of a physical occupation. The plaintiffs' right to use and possess the common driveway has in no respect been diminished. Although certainly the establishment of a community residence may result in increased use of the common driveway, the plaintiffs' coextensive right to use the property remains unchanged. The plaintiffs forfeited their right to absolute and exclusive use of the driveway when they purchased the property subject to their neighbor's easement. Although the plaintiffs further argue that the value of their property has been destroyed, that fact alone is insufficient to support a claim of a taking without just compensation. *See supra*. In sum, we find that the defendants' actions did not create a permanent physical occupation of the plaintiffs' property.

The plaintiffs next argue that a taking occurs when the government physically invades an easement in property. Each of the cases cited by the plaintiffs, however, involved a judicial finding that an easement not previously in existence had been taken by the government. *See Kaiser Aetna v. United States*, 444 U.S. 164, 180, 100 S.Ct. 383, 393, 62 L.Ed.2d 332 (1979) (easement over navigable waters); *United States v. Causby*, 328 U.S. 256, 265, 66 S.Ct. 1062, 1067, 90 L.Ed. 1206 (1946) (easement for aircraft flights over plaintiffs' property); *Portsmouth Harbor Land & Hotel Co. v. United States*, 260 U.S. 327, 330, 43 S.Ct. 135, 137, 67 L.Ed. 287 (1922) (easement for firing cannonballs over plaintiffs' property). In the instant case, however, the easement preexisted the challenged governmental conduct. Had the government bought the property located at 371 Old Army Road for use by a single family there would be no question that the occupants would be entitled to use the common driveway to the same extent as the prior owners. The plaintiffs' true complaint is that the defendants' conduct may result in an overuse of the easement over

---

12. The Court, however, specifically declined to question the "substantial authority upholding a State's broad power to impose appropriate restrictions upon an owners *use* of his property." *Loretto*, 458 U.S. at 441, 102 S.Ct. at 3179 (emphasis in original).

the common driveway. For the following reasons, however, this question is not yet ripe for review by a federal court.

## 1. *Ripeness*

The doctrine of ripeness embodied in Article III of the United States Constitution ensures that a dispute has "matured to a point that warrants decision." 13A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3532, at 112 (2d ed. 1984). "The injunctive and declaratory remedies are discretionary, and courts traditionally have been reluctant to apply them to administrative determinations unless these arise in the context of a controversy 'ripe' for judicial resolution." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Thus, the ripeness inquiry involves examination of both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. at 1515. Neither prong of this formula is satisfied here.

The plaintiffs claim that use of the common driveway by Futura House residents will result in an abuse of the easement. Their stated fear, however, has yet to materialize. Indeed, until resolution of the plaintiffs' real property action currently pending in New York Supreme Court, the extent of the parties' respective property rights in the common driveway remains unclear. The Supreme Court is currently determining whether use of the common driveway by Futura House will constitute a trespass on the plaintiffs' property. Incident to that determination, the court will need to assess the scope of the easement granted to residents of 371 Old Army Road, the easement's vitality today and the extent to which Futura House's use of the driveway might violate the easement. Until these determinations are made, this court is ill-suited to decide whether the use of the common driveway by Futura House residents will result in such a severe taking of the plaintiffs' property as to constitute a violation of the fifth amendment.[13]

■ Moreover, we do not see any hardship that will inure from our declination of jurisdiction. Should the state court conclude that Futura House is improperly using the common driveway, there is no reason to believe that it could not fashion appropriate relief.[14] Even without regard to the state court action, if after Futura House begins operations the plaintiffs can demonstrate that the use of the driveway has effectively destroyed their property rights, then they might assert a claim in federal court. Until the plaintiffs can demonstrate overuse of the easement, however, they have not suffered a property deprivation.

## VII. *Disposition of the Complaint*

■ Our determination that the plaintiffs have failed to allege a cognizable

---

13. This court lacks jurisdiction to determine in the first instance the scope of the easement and the extent of any infringement. Absent a cognizable property deprivation, this court lacks jurisdiction to hear the plaintiffs' claims. A property deprivation flowing from use of the common driveway, however, is not cognizable until a finding has been made regarding the easement's existence and breadth. Thus, until those issues are addressed by the appropriate state forum, we are unable to consider the plaintiffs' constitutional challenges.

14. The plaintiffs claim that the Padavan Law amended the New York Eminent Domain Procedure Law in such a manner that they are ineligible to receive compensation even if a taking of their property rights be found. N.Y.Em.Dom. Proc.Law § 206(E) (1978). We do not believe this to be the case. Section 206(E) provides that: "The condemnor shall be exempt from compliance with the provisions of this article when ... it complies with the procedures contained in section 41.34 of the mental hygiene law." *Id.* The plaintiffs argue that this exemption eliminates the state's responsibility to compensate property owners for condemned property when the condemnation relates to the establishment of a community residence for the mentally disabled. A careful reading of the statute, however, indicates that section 206(E) merely exempts the state from compliance with the procedure set out in Article 2 of the Eminent Domain Procedure Law. There is no indication that Article 5 of the Eminent Domain Procedure Law governing the procedure for determining just compensation, or other provisions of the law, are inapplicable to the factual situation presented by this case. Consequently, should a finding be made that the plaintiffs' property has been taken, they may seek relief through New York's eminent domain statute.

property interest is critical to the disposition of the plaintiffs' causes of action. The first and second causes of action alleging a taking without just compensation in violation of the fifth and fourteenth amendments must fail in the absence of a property deprivation.

The third and fourth causes of action allege a deprivation of procedural and substantive due process resulting from the lack of notice and an opportunity to be heard at the section 41.34 site selection hearing and at zoning meetings where Futura House applied for and received zoning variances. A right to a particular procedure cannot exist in a vacuum and must be linked to a right to life, liberty or property. *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983) ("Process is not an end in itself."). As stated above, the plaintiffs have not suffered the deprivation of a cognizable property right. Moreover, "an expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *Id.* at n. 12; *accord BAM Historical Dist. Ass'n v. Koch,* 723 F.2d 233, 236 (2d Cir.1983). Consequently, the plaintiffs' claims that they are entitled to the procedural protections of notice and an opportunity to be heard, embodied in the third and fourth causes of action, are fatally flawed.

The fifth cause of action alleges a violation of the Equal Protection Clause of the fourteenth amendment by the state's departure from its unwritten policy not to approve sites that share common driveways with adjacent homes.[15] The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. In other words, "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). The plaintiffs assert that they belong to a class of property owners shar-

ing common driveways and have been singled out by the state for disparate treatment in violation of the Equal Protection Clause. They have not, however, alleged that the Commissioner's determination was based on any discriminatory classification. *See generally* J. Nowak, R. Rotunda & J. Young, *Constitutional Law* Ch. 16, § 1 (2d ed. 1983).

A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an individual. '[T]he decisionmaker [must have] selected or reaffirmed a particular course of action at least in part "because of," not merely "in spite of," its adverse effects *upon an identifiable group.'*

*Huebschen v. Department of Health and Soc. Serv.,* 716 F.2d 1167, 1171 (7th Cir. 1983) (quoting *Personnel Administrator v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979) (footnote omitted) (emphasis added)). In this action, it is unclear what improper class distinctions the Commissioner is alleged to have used in making the site selection. "The guarantee of equal protection ... is not a source of substantive rights or liberties, but rather a right to be free from invidious discrimination in statutory classifications and other governmental activity." *Harris v. McRae,* 448 U.S. 297, 322, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980). Having failed to identify any class-based invidious discrimination, we think the plaintiffs have failed to allege a claim under the Equal Protection Clause.

Even if such a claim could be made, there can be little doubt that it would be subject to the rational basis standard of review. *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 440–42, 105 S.Ct. 3249, 3254–56, 87 L.Ed.2d 313 (1985) ("When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude.").

---

**15.** The defendants Surles and the State of New York deny that any such policy exists. Indeed, they allege that sites with common driveways have been approved in the past. For the purposes of this motion, however, we accept the allegations of the complaint as true.

Thus, the Commissioner's determination that the 371 Old Army Road location was the superior site for a community residence, despite the unwritten policy not to choose sites implicating common driveways, will be upheld so long as it was reasonable and had a fair relation to the object of the legislation at issue. *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989 (1920).

■ At the hearing to select the appropriate site for the Futura House community residence, Commissioner Surles was required to determine which of the proposed sites was superior. In opposition to Futura House's plans, the Town of Greenburgh proposed two alternate locations for the community residence. Commissioner Surles' letter determination attests to the bases supporting his decision that 371 Old Army Road was the superior site. The first site suggested by the Town "was rejected as being far too expensive (approximately twice the cost to purchase and rehabilitate as 371 Old Army Road) and located in an isolated, commercial area." Notice of Motion, Exhibit B. The second alternative site proposed by the Town was rejected for a number of reasons. The building was only half finished and it was uncertain how much it would cost to complete the work. There was testimony that there was a crack in the foundation of the structure and other infirmities in the structural integrity of the building. Because a roof had never been installed on the structure and there had been no substantial work on the building for an extended period of time, the building had suffered weather damage. Moreover, the extensive amount of work required to make the structure habitable would impose a considerable delay on the opening of the community residence.

In contrast, 371 Old Army Road was a finished structure requiring relatively little work before it could be certified for operation by the Office of Mental Health. The Commissioner then considered the Town's objections to the site at 371 Old Army Road. The Town objected on the grounds that the house was too close to the local high school and that the common driveway could pose problems. The Commissioner rejected the first objection because "[l]iving near schools is an attribute of living in a normal community setting," a goal strongly fostered by the state legislature. As to the common driveway, the Commissioner determined that, based on the opinion of a consulting architect for the Office of Mental Health, "the driveway could be reconstructed to provide satisfactory access to the site without crossing the neighbor's property, and still meet applicable Town codes." Notice of Motion, Exhibit B. After apparently careful consideration of the alternate sites and the objections, the Commissioner determined that 371 Old Army Road was the superior site.

We think it beyond peradventure that the Commissioner's determination was supported by a rational basis that was reasonably related to the legitimate goals of promoting community housing for the mentally disabled. The selection of 371 Old Army Road was based both on practical concerns of cost and location and social concerns of creating acceptable community housing with the least possible delay. Thus, even if the plaintiffs could assert an equal protection claim based on the defendants' alleged unwritten policy, we find that the determination had a rational basis. Consequently, the fifth cause of action fails to state a claim.

■ The sixth cause of action is styled as a substantive due process challenge to the criteria used to determine appropriate locations for community housing. Specifically, the plaintiffs claim that the statute does not include any standards or criteria for an administrator to differentiate between forms of social pathology and mental retardation. Thus, the plaintiffs argue, the Commissioner cannot rationally select an appropriate site location, resulting in "an unreasonable exercise of the police powers of the State of New York restricting and devaluing the Plaintiffs [sic] property contrary to the Fourteenth (14th) Amendment to the United States Constitution." Complaint ¶ 65. The plaintiffs' failure to allege a cognizable property

deprivation, however, eliminates any claim they may have to due process. This fact similarly undermines the plaintiffs' seventh cause of action. In that count, the plaintiffs claim that the administrative hearing held by the Commissioner was conducted unfairly and in violation of due process requirements because of the imposition of an allegedly incorrect burden of proof and receipt of allegedly inadmissible evidence. Absent a recognized property right, however, the plaintiffs' due process challenge must fail.

## VIII. *Conclusion*

Although most people would agree that mainstreaming individuals with physical and mental disabilities is a noble aim, few are willing to tolerate the reality of community residences in their own neighborhoods. In most cases, the distressed neighbors have little legal footing on which to base a constitutional challenge. In this action, however, the plaintiffs have seized upon the unusual factual circumstance of a common driveway to assert a broad-based challenge to New York's Mental Hygiene Law. We are not unsympathetic to the plaintiffs' concerns. We suspect, however, that the plaintiffs' true complaint stems from the proximity of people with mental disabilities and not from the deprivation of a property right. Based on all the foregoing, the complaint must be dismissed in its entirety for failure to state a claim upon which relief can be granted. The clerk will enter judgment for the defendants.

SO ORDERED.