Dinesh MEHTA and Pravina Mehta, Plaintiffs–Appellants,

v.

Richard C. SURLES, as Commissioner of the Office of Mental Health of the State of New York; The State of New York; and Futura House Foundation, Inc., Defendants–Appellees.

No. 767, Docket 89–7965.

United States Court of Appeals, Second Circuit.

Argued Feb. 1, 1990.

Decided May 29, 1990.

Ronald J. Koerner, Rose & Koerner, Brooklyn, N.Y., for appellants.

Yolanda M. Pizarro, Robert L. Schonfeld, Asst. Attys. Gen. for the State of N.Y., for appellees Surles and State of N.Y.

William Maker, Jr., Campbell, McMillan, Bosco, Penzel, Danzig & Maker, New Rochelle, N.Y., for appellee Futura House Found., Inc.

Before OAKES, Chief Judge, KEARSE, Circuit Judge, and FLETCHER, Circuit Judge.[1]

PER CURIAM:

## FACTS AND PRIOR PROCEEDINGS

Appellants Dinesh and Pravina Mehta own a house on 367 Old Army Road in the town of Greenburgh, New York. They bought the house in 1979. In 1988 their former next-door neighbors, the Kims, who resided at 371 Old Army Road, sold their house to appellee Futura House for use as a "community residence" to care for as many as ten mentally ill adults. According to the Mehtas' affidavits, which we must accept as true on this review of a grant of summary judgment in favor of the defendants-appellees,[2] the residence will function as a halfway house; some residents will live in the house for less than a year before moving on.

The houses at 367 and 371 share a common driveway. The driveway opens onto Edgemont Circle, a back street, which is the only access for motor vehicles to either house. The driveway is partly on the Mehtas' property and partly on Futura's property. Because the driveway is narrow, persons visiting Futura must drive at least partly on the portion of the driveway that is on the Mehtas' premises.

It is undisputed that prior to Futura's purchase of 371, both the owners of lots 367 and 371 had easements over one another's portion of the driveway for ingress and egress. The nature of that easement is, however, disputed. The district court believed that 371 had an express easement dating back to the conveyance of 371 by the developer Model Homes of Westchester in 1963. *Mehta v. Surles*, 720 F.Supp. 324, 332 (S.D.N.Y.1989). In that conveyance, Model Homes included in the deed "an easement of right-of-way in common with others over Edgemont Circle, as shown on said map for ingress and egress to and from the above premises and Old Army Road." The original deed to 367 (now the Mehtas' property) had an identical provision. The Mehtas insist, however, that the easement "over Edgemont Circle" refers not to the driveway but to the road built by the developer so that residents would not have to use Old Army Road, a main thoroughfare. Because this is an appeal from a summary judgment, we assume without deciding that the Mehtas are correct that

---

1. Of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

2. Although the defendants moved to dismiss the action for failure to state a claim under Fed.R. Civ.P. 12(b)(6), they presented and relied on exhibits and affidavits outside the complaint. We therefore treat their motion as one for summary judgment.

the deeds convey no express easements over either lot 367 or 371. We take as true the Mehtas' contention that prior to Futura's purchase, there was only an implied easement for the driveway in favor of lot 371 over their property. The Mehtas have submitted affidavits from the original homeowners of 367 and 371 stating that they understood the easement over the driveway to be limited to use incident to a single family home. The Mehtas allege that the group home's use of the driveway will overburden the easement.

Under Greenburgh's zoning ordinance, the lots at 367 and 371 Old Army Road are zoned R–15. That essentially means that each lot is restricted to use by a single "family." The zoning ordinance says that "[m]ore than five (5) persons, exclusive of domestic employees, not related by blood, marriage or adoption or guardianship shall not be considered to constitute a 'family.'" Such a definition of "family" would prevent residents of group homes like Futura from living in a neighborhood of single family houses were it not for a New York State law enacted in 1978, popularly known as the "Padavan Law." New York Mental Hygiene Law § 41.34.

Under the Padavan Law, a "community residence" established pursuant to certain procedures is "deemed a family unit, for the purposes of local laws and ordinances." N.Y. Mental Hyg. Law § 41.34(f). The procedures are spelled out in N.Y. Mental Hyg. Law § 41.34(c).[3] Under the proce-

dures, the municipality and the agency sponsoring the proposed community residence have certain procedural rights, most notably the right to a hearing before the Commissioner of the Office of Mental Health, a state official (in this case appellee Surles). But there is no provision requiring the Commissioner to allow neighboring homeowners such as the Mehtas to become parties to the proceedings.

The Mehtas admit that the Padavan Law procedures were followed in this case. They argue that the procedures are constitutionally inadequate because they fail to allow affected homeowners such as themselves the right to participate in the hearing.[4]

The Mehtas made a number of claims to the district court, all of which were rejected. They argued that they had a property right in the market value of their house and that the value was reduced and the right impaired by the state's allowing the group home to use land formerly zoned for single families. The Mehtas do not assert this kind of property right on appeal.

The Mehtas also asserted that the Padavan Law was unconstitutional in that it failed to make distinctions between different kinds of mentally-ill persons and that it was arbitrary and irrational for other reasons. They continue to press these equal protection and substantive due process claims in the "questions presented" portion of their brief, but they make absolutely no

**3.** Section 41.34(c)(1) provides:

When a site has been selected by the sponsoring agency, it shall notify the chief executive officer of the municipality in writing and include in such notice the specific address of the site, the type of community residence, the number of residents and the community support requirements of the program.... The municipality shall have forty days after the receipt of such notice to: (A) approve the site recommended by the sponsoring agency; (B) suggest one or more suitable sites within its jurisdiction which could accommodate such a facility; or (C) object to the establishment of a facility of the kind described by the sponsoring agency because to do so would result in such a concentration of community residential facilities for the mentally disabled in the municipality or in the area in proximity to the site selected or a combination of such facilities with other community residences or

similar facilities licensed by other agencies of state government that the nature and character of the areas within the municipality would be substantially altered.

N.Y.Mental Hyg.Law § 41.34(c)(1) (1988). If the municipality and the sponsoring agency cannot agree on a location for the community residence, either party can request an immediate hearing before the commissioner of the office of the department responsible for issuance of licenses and operating certificates to the proposed community residence. *Id.* at § 41.34(c)(5).

**4.** Mr. Mehta, in fact, was called as a witness at the hearing, but he had no right to call witnesses himself or to present evidence; indeed, it seems that the fact he testified at all was somewhat fortuitous—he happened to be at the hearing, and the municipality's lawyer without prior notice spontaneously asked him to testify.

argument on these points. When a party represented by counsel fails to argue particular points, we may consider those points waived if to do so will not result in manifest injustice. *See Dale v. Bartels,* 732 F.2d 278, 284 n. 9 (2d Cir.1984); *United States v. Loya,* 807 F.2d 1483, 1487 (9th Cir.1987); Fed.R.App.P. 28(a)(4). No manifest injustice will result here. The district court fully considered and lucidly disposed of the equal protection and substantive due process claims in its opinion. *Mehta,* 720 F.Supp. at 335–337.

Finally, the Mehtas argued that they have been deprived of their property right in the driveway without procedural due process in violation of 42 U.S.C. § 1983 because the Padavan Law is unconstitutional as applied to them. The procedural due process claim concerning the taking of the driveway is the only claim they have properly presented on appeal, and it is the only claim we address.

## DISCUSSION

### I.

■ In order for a person to establish that the state has deprived him of property without due process, he must first identify a property right, second show that the state has deprived him of *that* right, and third show that the deprivation was effected without due process. *See Fusco v. State of Connecticut,* 815 F.2d 201, 205 (2d Cir.), *cert. denied,* 484 U.S. 849, 108 S.Ct. 149, 98 L.Ed.2d 105 (1987). In this case, we need not address the third and most difficult step because the state procedures about which the Mehtas complain have not caused the deprivation of the property right identified by the Mehtas on appeal— the right to the driveway.

The Padavan Law does not purport to have any effect on individuals' substantive real property rights. The purpose of the Padavan Law's procedures is not to adjudicate property rights but to assess the pros and cons of various locations proposed for group homes. The approval of a site for a group home does not confer upon the owner of that site any defenses, privileges, or immunities in ordinary property actions brought by private parties. In stark con-

trast is the law that the United States Supreme Court struck down in *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982), a case on which the Mehtas heavily rely. That law provided, "No landlord shall ... interfere with the installation of cable television facilities upon his property or premises ..." *Id.* at 423, 102 S.Ct. at 3169 (quoting former New York Exec.Law § 828). The law in *Loretto* clearly provided cable television companies with a defense to trespass actions brought by landowners. Neither Futura nor the state has argued that the Padavan Law would provide such a defense in this case.

■ The Padavan Law *does* provide a defense to actions based on local zoning ordinances, because the Mental Hygiene Law deems a licensed facility to be a single family home *for the purposes of zoning.* N.Y.Mental Hyg.Law § 41.34(f). But the Mehtas do not assert, on appeal, a property right in the use of Futura's land at 371 Old Army Road. They claimed such a right in the district court, and the district court, relying on *Fusco,* properly rejected the claim. *Mehta,* 720 F.Supp. at 331. A person cannot claim a constitutionally-protected property interest in uses of neighboring property on the ground that those uses may affect the market value of his own property. *Fusco,* 815 F.2d at 206.

■ If the Padavan Law purported to affect the interpretation of easements and not just zoning laws, the Mehtas might have a claim that the law interfered with the property interest which they have identified. But the Padavan Law does not purport to do so. The alleged shortcomings of the state's procedures for selecting sites have no legal impact on easements.

The Mehtas point out that in addition to overriding local zoning laws, the Padavan Law makes one other change relevant to real property rights. It provides that the state's ordinary eminent domain procedures need not be followed when the Padavan Law procedures codified at N.Y.Mental Hyg.Law § 41.34 have been followed. N.Y.Em.Dom.Proc.Law § 206(E). The Mehtas argue that this provision has an impact on their rights, but we fail to see how § 206(E) affects their rights in this

case. New York did not exercise its eminent domain powers in allowing Futura to purchase and use the house at 371 Old Army Road. The Mehtas allege in their complaint that they filed a suit in state court asking, *inter alia*, for a preliminary injunction against Futura's alleged trespass. They do not allege that Futura raised § 206(E) as a defense or that the court, in denying the preliminary injunction, relied on § 206(E).

Because the Mehtas cannot establish that the procedures about which they complain relate to the deprivation of the right they assert, their procedural due process claim fails.

## II.

■ The district court held that the questions whether Futura had an easement over the driveway and, if so, the scope, were not "ripe" for adjudication in federal court. *Mehta,* 720 F.Supp. at 334 n. 13. The district court's ripeness discussion was somewhat confusing; the court, in finding that the deed from Model Homes gave Futura an express easement with no limits, *id.* at 332 and n. 11, seemed to have addressed the very questions it subsequently purported to dismiss as unripe. We agree with the district court's conclusion that the question of whether the easement has been overburdened should not be addressed by a federal court, but we do not find "ripeness" to be the proper basis for this conclusion.

Since we have found that even if there has been a deprivation of the Mehtas' property rights, the Padavan Law is not the cause, we have disposed of the Mehtas' federal claims without reaching the state law easement question. The state law "property" question[5] was not presented to the district court independently as through a pendent or ancillary claim. Rather, it

was simply presented as an issue that potentially had to be decided as a necessary antecedent to the decision of the federal question whether the Mehtas had received "due process of law." In light of our disposition, the question whether the easement has been overburdened presents a pure question of state law which will never be ripe for adjudication in federal court.[6] We do not address the issue simply because it is not necessary to the disposition of this case on appeal. Because it was also unnecessary for the district court to decide the question, we vacate the portion of the district court opinion addressing the nature and scope of the easement. The Mehtas have instituted trespass proceedings in state court. Their trespass claim should be decided there uncluttered by unnecessary determinations made by the federal courts.

The judgment of the district court is affirmed in part and vacated in part.

---

5. The extent to which a state can unilaterally redefine or place conditions on accepted notions of "property" through changes in its positive law, and then claim that a deprivation of what once was "property" is no longer a deprivation of "property" because of the new definition or condition, is a federal question. *See e.g. Nollan v. California Costal Commission,* 483 U.S. 825, 833 n. 2, 107 S.Ct. 3141, 3146 n. 2, 97 L.Ed.2d 677 (1987); *Cleveland Board of Edu-*

*cation v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985). In this case there is no allegation that New York law regarding easements is an inadequate source of authority regarding what is "property."

6. There is no diversity of state citizenship in this case.