Patricia DRAYTON, Darwin David Rhodes, Valerie Kirk, Clyde Cones, Angela Stallings, Lia–Quana Utley, Ida Jackson, Erica Miller, Teresa Branch, Linda Loving, Patricia Weaver, Margaret High and Denise Scott, for themselves and on behalf of all similarly situated African Americans who shopped at Toys 'R' Us stores since 2004, or who will shop at said Toys 'R' Us stores, Plaintiffs,

v.

TOYS 'R' US INC., Toys 'R' US–NY, LLC, Toys 'R' US–Ohio, Inc., John Doe # s 1–5, being individual managerial staff of Toys 'R' Us Store No. 8930, Metro One Loss Prevention Group (Guard Division NY), Inc. ("Metro One"), Rocky Etienne, individually, and in his official capacity as an employee of Metro One; Mark McMahon, individually, and in his official capacity as an employee of Metro One; "Joe Sheriff," real name unknown, the person intended being a Sheriff's Deputy of the Hamilton County Sheriff's Department, Cincinnati, Ohio, who accosted Darwin David Rhodes at a Toys 'R' Us store on or about January 25, 2006, "P.O. Todd," real name unknown, the person intended being a police officer of the City of Cincinnati, Ohio, who arrested Darwin David Rhodes in or about April 2006 for alleged theft at a Toys 'R' Us store on January 25, 2006, City of Cincinnati, Defendants.

No. 07 Civ. 6315 (RMB).

United States District Court, S.D. New York.

July 17, 2009.

Emmanuel Roy, New Start, LLC, Brooklyn, NY, Kenechukwu Chudi Okoli, Law Offices of K.C. Okoli, P.C., New York, NY, for Plaintiffs.

Nancy Ledy–Gurren, Ledy–Gurren Bass & Siff, LLP, Steve B. Getzoff, Thomas Anthony Catalano, Lester, Schwab, Katz and Dwyer LLP, New York, NY, Ronald Cherry, Cherry & Jenifer, P.A., Towson, PA, for Defendants.

## DECISION & ORDER

RICHARD M. BERMAN, District Judge.

### I. Introduction

On February 7, 2008, Patricia Drayton ("Drayton"), Darwin David Rhodes ("Rhodes"), Valerie Kirk ("Kirk"), Clyde Cones ("Cones"), Angela Stallings ("Stallings"), Lai–Quana Utley ("Utley"), Ida Jackson ("Jackson"), Erica Miller ("Miller"), Teresa Branch ("Branch"), Linda Loving ("Loving"), Patricia Weaver ("Weaver"), Margaret High ("High"), and Denise Scott ("Scott") (collectively, "Plaintiffs"), on behalf of themselves and "African Americans who shopped at Toys 'R' Us stores since 2004 or who will shop at said Toys 'R' Us stores," filed a First Amended Class Action Complaint ("Complaint") pursuant to 42 U.S.C. §§ 1981 and 1983, New York Executive Law § 296 *et seq.*, and New York Civil Rights Law § 40, against Toys 'R' Us, Inc. ("Toys"), Toys 'R' Us–NY LLC ("TRU–NY"), Toys 'R' Us–Ohio, Inc. ("TRU–OH"), John Doe # s 1–5, being individual managerial staff of Toys 'R' Us Store 8930 ("TRU–Does"), Metro One Loss Prevention Group (Guard Division NY), Inc. ("Metro One"), Rocky Etienne ("Etienne"), Mark McMahon ("McMahon"), Joe Sheriff, "a Sheriff's Deputy with the Hamilton County Sheriff's Department, in Cincinnati, State of Ohio ['Sheriff']"; P.O. Todd "a police officer employed by the City of Cincinnati, State of Ohio ['Todd']"; and the City of Cincinnati ("Cincinnati") (collectively, "Defendants").[1] (*See* Compl., dated Feb. 7, 2008, at ¶¶ 3, 939.) Plaintiffs' principal contentions are that Defendants discriminated against the so-called New York Plaintiffs (*i.e.,* Drayton, Kirk, Stallings, Utley, Jackson, and Branch), because they are African Ameri-

---

1. In their motion papers, dated November 18, 2008, Plaintiffs have consented to the dismissal of certain parties and claims. First, Plaintiffs have abandoned their class action allegations in the lawsuit. (Pls. Mem. of Law in Opp'n to Defs.'s Mot. for Summ. J., dated Nov. 18, 2008 ("Pls. Mem."), at 2.) Second, Plaintiffs acknowledge that the claims of the individual plaintiffs who failed to participate in discovery should be dismissed, *e.g.,* "Cones, Miller, Loving, Weaver, High, and Scott." (Pls. Mem. at 2.) Third, "Plaintiffs have never served Metro One employee, Rocky Etienne, or its former employee Mark McMahon with a summons and complaint," (Defs. Mem. of Law in Supp. of Mot. for Summ. J., undated and filed Oct. 1, 2008 ("Defs. Mem."), at 25), and "the complaint should be dismissed as against [Etienne and McMahon] individually." (Pl. Mem. at 2.)

And, although Plaintiffs name the "TRU–Does," "Joe Sheriff," "P.O. Todd," and the City of Cincinnati as defendants, the TRU–Does, Joe Sheriff, P.O. Todd, and the City of Cincinnati have not been served with the summons and complaint and are dismissed for failure to serve. *See* Docket Sheet 07 Civ. 6315; Fed.R.Civ.P. 4(m) ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court ... on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant ...."); *see also* Transcript of Oral Arg., dated July 15, 2009. Moreover, the body of the Complaint does not contain any allegations against the City of Cincinnati. *See Dove v. Fordham Univ.,* 56 F.Supp.2d 330, 335 (S.D.N.Y.1999) ("It is well settled that where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted."); *see also Antidote Intern., Films, Inc. v. Bloomsbury Pub., PLC,* 467 F.Supp.2d 394, 399 (S.D.N.Y.2006); *Shmueli v. City of New York,* No. 03 Civ. 1195, 2007 WL 1659210, at *4 n. 4, 2007 U.S. Dist. LEXIS 42012, at *11 n. 4 (S.D.N.Y. June 7, 2007).

can by asking to inspect their sales receipts after they made purchases at Toys stores (while not inspecting the sales receipts of "White Shoppers who are similarly situated"); and by "setting up receipt inspection check points at exit doors of [Toys] stores situated in communities that are predominantly African American [but not] in . . . predominantly Caucasian [communities]." (*See* Compl. ¶¶ 149, 159, 176.)

Rhodes alleges separately that, at a Toys store in Cincinnati, Ohio, Toys and some of its employees "interfere[ed] with [his] right to contract," and participated in his "unlawful prosecution" in Hamilton County, Ohio Municipal Court allegedly for shoplifting in "violation of section 2913.02 of the Revised Code of Ohio" and Toys' conduct is a violation of the Fourth and Fourteenth Amendments to the United States Constitution. (*See id.* ¶¶ 62, 81; *see also* Transcript of Oral Arg., dated July 15, 2009 ("Tr.").)

On or about October 1, 2008, Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ.P.") arguing, among other things, that: (1) the New York Plaintiffs' Section 1981 claim based upon Defendants' interference with their ability to contract fails because when "a 'contract' [is] completed, *i.e.*, a sale, there can be no contract violation as a result of post-sale conduct"; (2) the New York Plaintiffs' first "Section 1981 'equal benefit claim' . . . must fail" because they "cannot produce an evidentiary showing—sufficient to survive summary judgment—on the issue of intentional racial discrimination" and the New York Plaintiffs' second equal benefit claim fails because "[w]hile plaintiffs glibly claim that the receipt verification procedure only exists in predominantly non-white neighborhoods, there is not a scintilla of evidence to commend the allegation"; (4) Rhodes' Section 1983 claim

against Toys must be dismissed because Toys' employees are "not state actors" and "Rhodes' own evidence establishes that he alleges nothing more than that [Toys] 'called' for the police"; (5) Plaintiffs' conspiracy claim against the Defendants should be dismissed because "[i]n the absence of any claim establishing a violation of civil rights, the court must also dismiss claims of conspiracy brought under § 1985"; and (6) analysis of Plaintiffs' state law claims should be identical to the analysis of Plaintiffs' federal discrimination claims. (Defs. Mem. 7, 10, 18, 21, 24.)

On or about November 18, 2008, Plaintiffs filed an opposition arguing, among other things, that: (1) Defendants' interpretation of "section 1981 as not conferring any post-sale 'contract' benefits on a plaintiff[ ] unduly narrow[s] the sweep of the statute"; (2) the New York Plaintiffs' evidence is sufficient to support its first Section 1981 equal benefit claim because have presented "unchallenged sworn evidence of conduct which cannot be rationally interpreted otherwise than as . . . intentional discrimination on the basis of race" and their second Section 1981 equal benefit claim survives because the receipt checking policy is in "stores located in Black communities but not in stores located in White communities"; (3) Rhodes was prevented from contracting with Toys on the basis of his race because he was "ordered out of the [Ohio Toys] store in the presence of the store manager even though he had not completed his shopping"; and (4) Toys was "a joint participant with the 'State of Ohio'" in Rhodes' "false arrest and malicious prosecution." (Pls. Mem. at 17, 21, 23.) Plaintiffs do not appear to respond to Defendants' argument that Plaintiffs fail to state a claim for conspiracy; and "Plaintiffs agree . . . that the analysis of their state claims should be identical to that of their federal discrimination claims." (*Id.*)

On or about December 2, 2008, Defendants filed a reply brief ("Reply"). Oral argument was held on July 15, 2009. (*See* Transcript of Oral Arg., dated July 15, 2009, ("Oral Arg. Tr.").)

**For the reasons set forth below, the Defendants' motion for summary judgment is granted in part and denied in part.**

## II. Background

Toys operates in excess of 500 stores throughout the United States. (Defs. 56.1 Statement, dated Sept. 29, 2008 ("Defs. 56.1"), at ¶ 1; *see also* Pls. Rule 56.1 Statement, dated Nov. 18, 2008 ("Pls. 56.1"), at ¶ 1.) Metro One provides security services to Toys at certain locations in the New York area and employs security guards who serve as Exit Greeters pursuant to policies promulgated by Toys. (Defs. 56.1 ¶¶ 3, 4; *see also* Pls. 56.1 ¶¶ 3, 4.) An Exit Greeter performs "a 'reasonability check' of receipts (as opposed to a verification of each item) when customer traffic conditions allow." (Defs. 56.1 ¶ 5; *see also* Pls. 56.1 ¶ 5.) According to Defendants, the purpose of the Exit Greeter policy "is to deter shoplifters who would carry large amounts of merchandise and/or large items out of the store without a receipt or with a receipt that obviously does not match what they are carrying." (Defs. Ex. DD at 2.) The Exit Greeter policy states that "[i]n fairness to all of our customers, the Exit Greeter must not verify the receipts of some customers and not others." (Defs. Ex. DD at 2.)

This "receipt checking policy" is employed by Toys at stores located at 970 White Plains Road, Bronx, New York ("White Plains, N.Y. Toys Store"), 350 Baychester Avenue, Bronx, New York ("Baychester Avenue, N.Y. Toys Store"), and 300 West Sunrise Highway, Valley Stream, New York ("Valley Stream, N.Y. Toys Store"). (Defs. 56.1 ¶¶ 8, 30, 37, 45; *see also* Pls. 56.1 ¶¶ 8, 30, 37, 45.) Plaintiffs allege that the "receipt checking policy" is not employed at Toys stores located in Levittown, Long Island, New York; Carle Place, Long Island, New York; or at 42nd Street in New York City because these stores are located in, what Plaintiffs characterize as, "predominantly White neighborhoods." (Pls. 56.1 ¶¶ 34(a)–34(f), 38.)

**New York Plaintiffs**

The New York Plaintiffs are each African Americans and claim that, at various dates between March 12, 2005 and September 10, 2007, they each purchased merchandise at either the White Plains, N.Y. Toys Store, the Baychester Avenue, N.Y. Toys Store, or the Valley Stream, N.Y. Toys Store, and each was issued a receipt by a cashier. (Defs. 56.1 ¶¶ 10, 22, 23, 27, 33, 35, 42, 46, 55; *see also* Pls. 56.1 ¶¶ 10, 22, 23, 27, 33, 35, 42, 46, 55.) After making their purchases and upon exiting the stores, each of the New York Plaintiffs was stopped by a Metro One employee (as an "Exit Greeter") and asked to produce their receipt. (Defs. 56.1 ¶¶ 12, 22, 34, 42, 48, 56; *see also* Pls. 56.1 ¶¶ 12, 22, 34, 42, 48, 56.)

Specifically, on or about July 10, 2006, Drayton made a purchase at the White Plains, N.Y. Toys Store. (Defs. 56.1 ¶ 13; *see also* Pls. 56.1 ¶ 13.) Upon exiting the store, Drayton declined to show the Exit Greeter her receipt, and the Exit Greeter prevented Drayton from leaving the store. (Def. 56.1 ¶ 15; *see also* Pls. 56.1 ¶ 15.) Eventually the Exit Greeter "verified her purchase with the cashier." (Def. 56.1 ¶ 15; *see also* Pls. 56.1. ¶¶ 15, 15(a).) "From the time that Drayton declined to show her receipt until the time she was allowed to leave the store was approximately 12–15 minutes." (Defs. 56.1 ¶ 16; *see also* Pls. 56.1 ¶¶ 15(b), 16; *see also*

Dep. Tr. of Patricia Drayton, dated Mar. 17, 2008 ("Drayton Dep."), at 67:9–14.) Drayton was shopping with Nancy Soltren who is a "very Caucasian-looking, light-skinned Hispanic" and she (*i.e.*, Nancy Soltren) was "allowed to leave the store without the security guard checking her receipt." (Pl. 56.1 16(c); *see also* Drayton Pep. 58:3–7.)

Kirk purchased goods at the White Plains, N.Y. Toys Store on two occasions, *i.e.*, September 12, 2006 and November 28, 2006, and on each occasion, when asked to produce her receipt by an Exit Greeter, "Kirk refused to produce her receipt" and "walked out of the store." (Defs. 56.1 ¶¶ 22–29; *see also* Pls. 56.1 ¶¶ 22–29; Dep. Tr. of Valerie Kirk, dated Mar. 19, 2008 ("Kirk Dep."), at 83:14–20; 84:12–24.) On November 28, 2006, Kirk was shopping with Jessica Lebron "a very light-skinned Hispanic female" and "her Caucasian friend, Tanya Orth" and neither Ms. Lebron nor Ms. Orth was asked for their receipt. (Pl. 56.1 ¶ 28(e)-(f).)

On or about August 19, 2007, Stallings shopped at the Baychester Avenue, N.Y. Toys Store and observed the Exit Greeter not "ask a [light-skinned Hispanic-looking] couple who bought a bike for their receipt." (Pls. 56.1 ¶ 34(g); *see also* Dep. Tr. of Angela Stallings, dated Mar. 27, 2008 ("Stallings Dep."), at 38:15–25; 39:1–3; 40:9–24; 42:1–4.) A few minutes later, Stallings purchased a bicycle and upon exiting the store, the Exit Greeter requested to see her receipt and when Stallings told the Exit Greeter that "she did not see him ask the light-skinned couple for their bike receipt, the guard said nothing." (Pls. 56.1 ¶ 34(j); Stallings Dep. 42:8–13.)

On or about December 21, 2006, after making a purchase at the White Plains, N.Y. Toys Store, Utley refused to produce her receipt and walked out the door. (Defs. 56.1 ¶¶ 43–44; *see also* Pls. 56.1 ¶¶ 43–44.) Utley observed White shoppers exit the store without being stopped or asked by an Exit Greeter for their receipts. (Pls. 56.1 ¶ 37; *see also* Dep. Tr. of Lai–Quana Utley, dated Apr. 2, 2008 ("Utley Dep."), at 93:11–15.)

On or about December 23, 2006, Jackson made a purchase at the Valley Stream, N.Y. Toys Store and "was asked for [her] receipt by the security guard." (Defs. 56.1 KK 45, 48; *see also* Pls. 56.1 ¶¶ 45, 48.) Jackson also observed White customers "exit the store without being asked to present their receipts." (Pls. 56.1 ¶ 45, 51(c); *see also* Dep. Tr. of Ida Jackson, dated Apr. 2, 2008 ("Jackson Dep."), at 56:9–19, 57:5–15.)

On September 10, 2007, Branch purchased merchandise at the Valley Stream, N.Y. Toys Store. (Defs. 56.1 ¶¶ 52, 55; *see also* Pls. 56.1 ¶¶ 52, 55.) At the door, an Exit Greeter asked to see her receipt. (Defs. 56.1 ¶¶ 48, 49; Pls. 56.1 ¶¶ 48, 49, 60(a); *see also* Dep. Tr. of Teresa Branch, dated Apr. 3, 2008 ("Branch Dep."), at 52:6–20.) At her deposition, Branch testified as follows: "Q: While you were engaged with the guard, during this 20 minutes, you recall seeing three or four other people walk by? A: Right. Q: Some white? A: They were all white at the end." (Branch Dep. at 83:2–8.)

**Plaintiff Rhodes**

Rhodes alleges that, on or about January 25, 2006, he entered a Toys store in Cincinnati, Ohio to purchase a video game and was followed by Toys employees. (Defs. 56.1 ¶¶ 62, 63; *see also* Pls. 56.1 ¶¶ 62, 63.) Rhodes alleges that Toys "called the sheriff on [him]," (Dep. Tr. of David Darwin Rhodes, dated June 25, 2008 ("Rhodes Dep."), at 71:14–15), but "Rhodes did not hear or see any [Toys] employee call the police or Sheriff." (Defs. 56.1 ¶ 65; *see also* Pls. 56.1 ¶ 65.) According to

Plaintiff, the Sheriff arrived, he "patted [Rhodes] down," "[Rhodes] showed him [his] I.D.," the Sheriff "ran [Rhodes'] information on a radio," and after the Sheriff was informed that Rhodes had "no outstanding warrants," the "Sheriff said, They [*i.e.*, Toys] don't want your business." (Rhodes Dep. at 81:3, 82:22, 24, 84:6–7, 85: 23–25.) "At the time of the incident, Rhodes wore his hair in dreadlocks and believes that he was treated the way he was treated because he was an African American male who wore dreadlocks." (Pls. 56.1 ¶ 66(1).) Rhodes "admits that all [Toys] employees ignored him and never spoke directly to him." (Rhodes Dep. 90:19–20; Defs. 56.1 ¶ 63; *see also* Pls. 56.1 ¶ 63.) "Rhodes was given a citation, some months afterward, by the police for theft of [Toys] merchandise" on January 25, 2006. (Defs. 56.1 ¶ 67; *see also* Pls. 56.1 ¶ 67.) The charges against Rhodes were ultimately dismissed on or about April 23, 2007 because, according to Plaintiff, no Toys employees appeared at a proceeding in Hamilton County, Ohio Municipal Court. (Defs. 56.1 ¶ 68; *see also* Pls. 56.1 ¶ 68; Oral Arg. Tr.)

### III. Legal Standard

Summary judgment is appropriate only where the parties' submissions show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Nevin v. Citibank, N.A.*, 107 F.Supp.2d 333, 340 (S.D.N.Y.2000); *see also Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir.1999). In ruling on a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Id.* Summary judgment may be appropriate even in the "fact-intensive context of discrimination cases." *James v. New York Racing Ass'n*, 233 F.3d 149, 157 (2d Cir. 2000). An "extra measure of caution is

merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions." *Schiano v. Quality Payroll Sys.*, 445 F.3d 597, 603 (2d Cir.2006) (internal citations omitted). But, even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment. *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997). The test for summary judgment "even in discrimination cases, is whether the evidence can reasonably support a verdict in the plaintiff's favor." *Ode v. Mount Sinai Med. Ctr.*, No. 04 Civ. 9632, 2006 WL 1711508, at *3, 2006 U.S. Dist. LEXIS 41479, at *7 (S.D.N.Y. June 22, 2006).

### IV. Analysis

#### (1) New York Plaintiffs' Section 1981 "Right to Contract" Claim

Defendants argue, among other things, that the "fact that each [of the New York Plaintiffs] completed her purchase when the conduct complained of (receipt verification) occurred mandates that the Section 1981 contract claim be dismissed." (Defs. Mem. at 6.) Plaintiff counters, among other things, that a "black [person] who was singled out for treatment different from that meted to her white counterparts in a retail store after she had completed her purchase [makes] out a claim under section 1981." (Pls. Mem. at 17.)

To state a Section 1981 contract claim, a plaintiff must show "[i] that the defendant intended to discriminate on the basis of race, and [ii] that the discrimination concerned the making and enforcing of contracts." *Nevin*, 107 F.Supp.2d at 349. "[C]ourts that have addressed section 1981 claims in the context of retail

transactions have held that after a purchase is completed, 'there is no continuing contractual relationship. Instead, the relationship is based on a single discrete transaction—the purchase of goods.'" *Bishop v. Toys 'R' Us–NY LLC,* 414 F.Supp.2d 385, 393 (S.D.N.Y.2006) (quoting *Arguello v. Conoco, Inc.,* 330 F.3d 355, 359–60 (5th Cir.2003)).

■ New York Plaintiffs' Section 1981 contract claims fail as a matter of law because it is undisputed that each of the New York Plaintiffs was alleged to have been stopped and asked to show their receipts after each Plaintiff had completed their purchase and were attempting to exit the store. (*See* Pls. 56.1 ¶¶ 12, 22, 34, 42, 48, 561); *see also Toys 'R' Us–NY LLC,* 414 F.Supp.2d at 393. "Thus, the contractual relationship between [New York Plaintiffs] and [Defendants] had ended, and none of [D]efendants' actions interfered with [their] right to 'make' or 'enforce' that contract." *Toys 'R' Us–NY LLC,* 414 F.Supp.2d at 393; *see also Youngblood v. Hy–Vee Food Stores, Inc.,* 266 F.3d 851, 854 (8th Cir.2001) ("Once Youngblood paid the cashier and received the beef jerky from the cashier, neither party owed the other any duty under the retail-sale contract."); *Flowers v. TJX Co., Inc.,* No. 91 Civ. 1339, 1994 WL 382515, at *6 (N.D.N.Y. July 15, 1994) ("[I]t is uncontested that plaintiffs completed their retail transactions at T.J. Maxx despite the alleged discrimination of defendants. Because no interference with the formation of an implicit retail contract took place, plaintiffs can not recover damages under § 1981.").

### (2) New York Plaintiffs' Section 1981 "Equal Benefit" Claims

Defendants argue, among other things, that "Section 1981 operates to prohibit only intentional, purposeful racial discrimination"; "Plaintiffs' deposition testimony in this regard consists merely of speculation and surmise and isolated anecdotes"; and "[w]hile Plaintiffs ... claim that the receipt verification procedure only exists in predominantly non-white neighborhoods, there is not a scintilla of evidence to commend the allegation." (Defs. Mem. at 8, 12, 15.) Plaintiffs counter, among other things, that the testimony of the New York Plaintiffs "show[s] intent to discriminate on the part of Toys and their agents"; and the receipt checking policy is "in stores located in Black communities but not in stores located in ... White communities." (Pls. Mem. at 18, 19.)

■ An equal benefit claim under Section 1981 requires "proof that [i] the plaintiff is a member of a racial minority, [ii] the defendants intended to discriminate on the basis of race, and [iii] the discrimination concerns one of the statute's enumerated activities." [2] *Bishop v. Toys 'R' Us–NY, LLC,* No. 04 Civ. 9403, 2009 WL 440434, at *5, 2009 U.S. Dist. LEXIS 17377, at *14 (S.D.N.Y. Feb. 20, 2009); *see also Tolbert v. Queens Coll.,* 242 F.3d 58, 69 (2d Cir.2001). A Section 1981 "equal benefit" claim "'requires a nexus to state proceedings or laws,' even though state action is not required." *Toys 'R' Us–NY LLC,* 2009 WL 440434, at *5, 2009 U.S. Dist. LEXIS 17377, at *14 (quoting *Phillip v. Univ. of Rochester,* 316 F.3d 291, 294–95 (2d Cir.2003)). "There must be some evidence of 'purposeful and systematic discrimination' in the form of specific instanc-

**2.** "Those enumerated activities include the rights 'to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property.'" *Brown v. City of Oneonta,* 221 F.3d 329, 339 (2d Cir.2000) (quoting 42 U.S.C. § 1981(a)).

es when members of a recognized group were 'singled ... out for unlawful oppression in contrast to others similarly situated.'" *Toys 'R' Us–NY LLC*, 2009 WL 440434, at *6, 2009 U.S. Dist. LEXIS 17377, at *17 (quoting *Albert v. Carovano*, 851 F.2d 561, 573 (2d Cir.1988)).

There is no dispute that each of the New York Plaintiffs is African American and a member of a racial minority. (*See* Compl. ¶¶ 9, 11, 13, 14, 15, 17); *see also Stephens v. Hofstra Univ. Sch. of Law*, No. 01 Civ. 5388, 2005 WL 1505601, at *6, 2005 U.S. Dist. LEXIS 37540, at *18 (E.D.N.Y. June 24, 2005).

 Material issues of fact exist as to whether the New York Plaintiffs were "singled out for unlawful oppression" by the alleged enforcement of Toys' receipt checking policy. *Toys 'R' Us–NY LLC*, 2009 WL 440434, at *6, 2009 U.S. Dist. LEXIS 17377, at *17. A reasonable jury could conclude that the New York Plaintiffs were intentionally discriminated against on the basis of their race if it were to credit the claims that the New York Plaintiffs could not exit a Toys store without having to show their receipt while non-African American customers were permitted to exit Toys stores without having to show their receipts. An "inference of discrimination arises when [an] individual of one race [is] treated less favorably than those of another race who are similarly situated." *Dowrich v. Aramark Healthcare Support Servs.*, No. 03 Civ. 2392, 2007 WL 2572122, at *8, 2007 U.S. Dist. LEXIS 65268, at *25 (E.D.N.Y. Sept. 4, 2007); (*see, e.g.,* Drayton Dep. 83:14–17) (Q: "white skinned people have left the store without showing their receipts? A: Yes."); Utley Dep. 92:16–18 (Q: "you saw white customers exit the store without be-

ing stopped? A; Yes."); Branch Dep. 83:2–8 (Q: "you recall seeing three or four other people walk by? A: Right. Q: Some white? A: They were all white at the end."); (*see also* Defs. 56.1 ¶¶ 12, 22, 34, 42, 48, 56.)

 Material issues of fact also exist regarding whether Defendants' alleged discrimination concerns one of Section 1981's enumerated activities, *i.e.,* the "full and equal benefit of all laws and proceedings for the security of persons and property." *Feliciano v. County of Suffolk*, 419 F.Supp.2d 302, 314 (E.D.N.Y.2005); *see also Toys 'R' Us–NY LLC*, 2009 WL 440434, at *5–6, 2009 U.S. Dist. LEXIS 17377, at *15–16. The New York Plaintiffs have alleged that the Defendants' racially discriminatory conduct deprived them of the full and equal benefit of New York State Executive Law § 296 a "state civil rights law" which protects "the security of persons and property." *Toys 'R' Us–NY LLC*, 414 F.Supp.2d at 394. Material issues of fact exist as to whether Defendants intentionally discriminated against the New York Plaintiffs in administering the Toys receipt checking policy under New York Executive Law § 296 (which "prohibits racial discrimination in places of public accommodation").[3] *O'Connor v. 11 W. 30th St. Rest. Corp.,* No. 94 Civ. 2491, 1995 WL 354904, at *6, 1995 U.S. Dist. LEXIS 8085, at *19 (S.D.N.Y. June 13, 1995); *Cahill v. Rosa*, 89 N.Y.2d 14, 23, 651 N.Y.S.2d 344, 674 N.E.2d 274 (N.Y.1996) (New York Executive law § 296 "deems it unlawful discrimination if a place of public accommodation denies its accommodations to any person on the basis of 'race, creed, color, national origin, sex, or disability or marital status.'").

---

3. Section 292(9) of the New York Executive Law defines "place of public accommodation" to include "wholesale and retail stores and establishments dealing with goods or services of any kind."

The New York Plaintiffs appear to have demonstrated a "nexus to state proceedings or laws" in that they have "identif[ied] a relevant law or proceeding for the 'security of persons and property,'" and material issues of fact remain as to whether Defendants "deprived them of 'the full and equal benefit' of this law or proceeding." *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir.2003); *see also Toys 'R' Us–NY LLC*, 414 F.Supp.2d at 394; *see also Pierre v. J.C. Penney Co.*, 340 F.Supp.2d 308, 312–13 (E.D.N.Y.2004).[4]

■ At the same time, the New York Plaintiffs have failed to raise an issue of material fact as to their second equal benefit claim, *i.e.*, that Toys does not implement its receipt checking policy in stores located in the allegedly "predominantly White neighborhoods," of Carle Place, Levittown, and Midtown Manhattan. *See Adler v. Kent Village Hous. Co.*, 123 F.Supp.2d 91, 99 (E.D.N.Y.2000). That is, Plaintiffs have provided only conclusory allegations—and cite to no discovery and no evidence—that Toys' determination not to have a receipt checking policy in stores located in Carle Place, Levittown, and Midtown Manhattan is discriminatory. *See Toys 'R' Us–NY LLC*, 2009 WL 440434, at *6, 2009 U.S. Dist. LEXIS

17377, at *16; (*see also* Pls. 56.1 ¶ 34) ("when she exited the Levittown store, Stallings' receipt was not checked"; "when Stallings exited the Carle Place store, no one asked to see her receipt"); ¶ 38 (Utley "discovered that [the Toys store at] 42nd Street in New York City did not require customers to show their receipts"). Defendants, by contrast, have shown through the (unchallenged) Affidavit of Victor De-Blassi, Toys' Director of Loss Prevention, dated September 25, 2008, that although "not all [Toys] stores in the Metropolitan New York area utilize the Exit Greeter Program," the "decision by [Toys] to utilize the [Exit Greeter Program] in a particular store is dictated by a number of factors, which include both the budget of the store (whether its sales can support the costs of the Program), its loss data and the history of performance of the Exit Greeter Program"; and the facts that Toys "does not maintain or calculate an 'ethnic profile' of the shoppers in a particular store (no less the surrounding neighborhood) and does not consider the ethnic make-up of its shoppers as relevant to any decision as to the services to be supplied in any particular store." (DiBlassi Aff. ¶ 6.) The New York Plaintiffs' second Section 1981 "equal benefit" claim is, therefore,

4. Defendants argue that the New York Plaintiffs' section 1981 claims should be analyzed using a burden-shifting framework under which a plaintiff establishes a "prima facie case of racial discrimination"; thereafter the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for the alleged discriminatory conduct; and if defendant meets its burden, the plaintiff must then show that the stated non-discriminatory reason "was a pretext or discriminatory in its application." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 807, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir.2001); *Puglisi v. Underhill Park Taxpayer Assoc.*, 947 F.Supp. 673 (S.D.N.Y.1996). Other courts have not applied a burden shifting framework

to section 1981 claims. *See, e.g., Albert v. Carovano*, 851 F.2d 561, 570 (2d Cir.1988); *Bishop v. Toys 'R' Us–NY, LLC*, No. 04 Civ. 9403, 2009 WL 440434, at *5, 2009 U.S. Dist. LEXIS 17377, at *14 (S.D.N.Y. Feb. 20, 2009). Under either approach, "[t]he court must examine the entire record to determine if plaintiffs meet their ultimate burden of persuading the fact-finder of a central element of a 1981 claim: namely, that defendants intentionally discriminated against them on the basis of their race." *Lizardo v. Denny's, Inc.*, 270 F.3d 94 (2d Cir.2001). The New York Plaintiffs have shown that material issues of fact exist—under either analytical framework—as to whether they were intentionally discriminated against on the basis of their race.

dismissed. *See Toys 'R' Us–NY LLC,* 2009 WL 440434, at *6, 2009 U.S. Dist. LEXIS 17377, at *16.

### (3) Rhodes' Section 1981 Claims

Defendants argue, among other things, that "[w]hile [Rhodes] alleges racial animus, he points to no epithets or slurs, or any activity by [Toys] employees ... with which to create an issue of intentional discrimination." (Defs. Mem. at 18.) Plaintiffs counter, among other things, that Rhodes "was escorted out of [Toys' Cincinnati Store] by a Sheriff who was invited there by [Toys] employees who had surveilled him while he shopped for a video game for his son" and "[t]hat scenario falls squarely within Section 1981." (Pls. Mem. at 20–21.)

■ "A section 1981 claim requires proof that [i] the plaintiff is a member of a racial minority, [ii] the defendants intended to discriminate on the basis of race, and [iii] the discrimination concerns one of the statute's enumerated activities." *Toys 'R' Us–NY, LLC,* 2009 WL 440434, at *5, 2009 U.S. Dist. LEXIS 17377, at *14.[5]

It is not disputed that Rhodes is African American and, thus, a member of a racial minority. (*See* Pls. 56.1 ¶ 69); *see also Stephens,* 2005 WL 1505601, at *6, 2005 U.S. Dist. LEXIS 37540, at *18.

■ But, Rhodes does not support the second element of his section 1981 claim. His conclusory allegations that he was intentionally discriminated against on January 25, 2006 "because of [his] dreadlocks," and because "I deal with racism, period. I mean, you live in America," (Rhodes Dep. 32:12–13; 53:6–7), are insufficient, as a matter of law, to give rise to an inference of discrimination. *Babiker v. Ross Univ.*

*School of Medicine,* No. 98 Civ. 1429, 2000 WL 666342, at *4, 2000 U.S. Dist. LEXIS 6921, at *16 (S.D.N.Y. May 19, 2000); *see also Tripp v. Long Island Univ.,* 48 F.Supp.2d 220, 225 (E.D.N.Y.1999) (plaintiff "cannot defeat a summary judgment motion by 'the mere incantation of discriminatory intent or state of mind.'"). Rhodes' cannot base "his claim of racial discrimination on general racism in society," *Hodge v. RCA Global Commc'n,* No. 93 civ. 261, 1994 WL 240373, at *3, 1994 U.S. Dist. LEXIS 7089, at *9 (S.D.N.Y. May 26, 1994), and there is no evidence, other than Rhodes' assumptions, that Defendants perceived Rhodes' dreadlocks improperly and/or "as related to his race," *Hines v. Hillside Children's Ctr.,* 73 F.Supp.2d 308, 317 (W.D.N.Y.1999).

Rhodes appears not to have taken any depositions of Toys employees nor to have adduced any (non-conclusory) evidence of Toys' alleged discriminatory motive "so that its reliability can be assessed." *Stone v. N.Y. Pub. Library,* No. 05 Civ. 10896, 2008 WL 1826485, at *5, 2008 U.S. Dist. LEXIS 32800, at *14 (S.D.N.Y. Apr. 22, 2008); (*see also* Oral Arg. Tr.). Rhodes' "assertions and intuitions regarding the possible motivations of the [Toys] employees are not sufficient at this stage." *Id.*; *see also Shark v. City of N.Y.,* No. 03 Civ. 2616, 2008 WL 4444122, at *6, 2008 U.S. Dist. LEXIS 78982, at *18 (S.D.N.Y. Sept. 29, 2008) ("In response to defendants' motion, it was incumbent upon plaintiff to come forward with evidence. In light of this lack of evidence and plaintiff's full opportunity to conduct discovery, summary judgment against plaintiff is appropriate."); *Rollins v. Dep't of Educ.,* No. 05 Civ. 10482, 2008 WL 2736018, at *4, 2008 U.S. Dist. LEXIS 52717, at *11 (S.D.N.Y.

---

**5.** As noted above in note one, the City of Cincinnati, Sheriff, and Todd have not been served with the Complaint and have been dismissed. (*See supra* at 153 n. 1.) Accordingly, the Court evaluates the conduct of the remaining Toys Defendants.

July 8, 2008) ("plaintiff points to no evidence on the record that this decision was made with discriminatory motives."); *Luten v. Daily News, L.P.*, No. 97 Civ. 2462, 2000 WL 335731, at *4, 2000 U.S. Dist. LEXIS 3896, at *11 (S.D.N.Y. Mar. 30, 2000) ("during discovery, plaintiffs were afforded the opportunity to depose" the defendants regarding alleged discrimination but "never deposed any [of defendants'] officials"). Rhodes, as noted, chose not to depose any of Toys' employees and his "unsubstantiated, conclusory allegation of discrimination ... does not raise an inference of discrimination." *Schuk v. Phelps Mem'l Hosp. Center*, No. 89 Civ. 5919, 1991 U.S. Dist. LEXIS 20664, at *11 n. 3 (S.D.N.Y. Apr. 10, 1991).

In sum, Rhodes has "done little more than cite to [his alleged] mistreatment and ask the court to conclude that it must have been related to [his] race. This is not sufficient." *Lizardo v. Denny's, Inc.*, 270 F.3d 94, 104 (2d Cir.2001); *see also Norton v. Sam's Club*, 145 F.3d 114, 120 (2d Cir. 1998); *see also Babiker*, 2000 WL 666342, at *4, 2000 U.S. Dist. LEXIS 6921, at *16; *Okolie v. Paikoff*, 589 F.Supp.2d 204, 217 (E.D.N.Y.2008).[6]

### (4) Rhodes' Section 1983 Claim

Defendants argue, among other things, that "the appropriate inquiry with respect to Rhodes' claim is whether he has asserted sufficient activities or conduct by [Toys] to meet the required showing of state action" and Rhodes' "own evidence establishes that he alleges nothing more than that [Toys] 'called' for the police, thus providing the death knell to his § 1983 claim." (Defs. Mem. at 20–21.) Plaintiffs counter, among other things, that the

"clear evidence in the record is that the State of Ohio filed a criminal complaint against Rhodes based upon the 'visual observation' of [Toys] employees" *that Rhodes had shoplifted.* (Pls. Mem. at 22.)

██ "In order to state a claim under § 1983, a plaintiff must allege [i] that the challenged conduct was attributable at least in part to a person acting under color of state law, and [ii] that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Haley v. Pataki*, 106 F.3d 478, 482 (2d Cir.1997).

██ "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Ciambriello v. County of Nassau*, 292 F.3d 307, 323 (2d Cir.2002). As noted, the government actors originally named as defendants, *i.e.*, the City of Cincinnati, Joe Sheriff, and Todd, have been dismissed from this case. (*See supra* n. 1.) In order to hold the non-government Defendants liable under section 1983, Rhodes must show that "the private actor 'is a willful participant in joint activity with the State or its agents,'" presumably the alleged false arrest and prosecution. *Ciambriello*, 292 F.3d at 323; *see also Mehta v. Surles*, 720 F.Supp. 324, 330 (S.D.N.Y.1989) ("as a threshold matter, we must determine whether the challenged conduct was committed by a person acting under color of state law.").

██ Rhodes' allegations—even if substantiated—that Toys called the Sheriff and/or provided information which led to

---

6. The Court need not analyze the third element of this claim because Rhodes' failure to show "purposeful discrimination or animus is fatal to his Section 1981 claim." *Amadasu v.* *Ngati*, No. 05 Civ. 2585, 2006 WL 842456, at *6, 2006 U.S. Dist. LEXIS 19654, at *18 (E.D.N.Y. Mar. 27, 2006).

Rhodes' criminal complaint and a subsequent prosecution in Ohio are insufficient because "furnishing information to the police does not by itself make someone a joint participant in state action under Section 1983." *Valez v. City of N.Y.,* No. 08 Civ. 3875, 2008 WL 5329974, at *3, 2008 U.S. Dist. LEXIS 101709, at *10 (S.D.N.Y. Dec. 16, 2008); *see also Vazquez v. Combs,* No. 04 Civ. 4189, 2004 WL 2404224, at *4, 2004 U.S. Dist. LEXIS 22137, at *11 (S.D.N.Y. Oct. 22, 2004) ("merely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation."). Rhodes offers no evidence of actions taken under color of state law apart from the conclusion that Toys "was a joint participant with the State of Ohio." (Pls. Mem. at 22.)

 Rhodes' allegations that "when the Sheriff first approached and questioned Rhodes, he did so in the company of the store manager" and that the Sheriff interacted with Rhodes "in the presence of the store manager," (Pl. 56.1 ¶¶ 66(d)-(h)), amount to " 'general allegations of cooperation' between private individuals and specific state agents [which] do not make out a claim of action taken under color of state law." *Puglisi v. Underhill Park Taxpayer Assoc.,* 947 F.Supp. 673, 706 (S.D.N.Y. 1996). Rhodes (as noted on page eight above) acknowledges that he "did not hear or see any [Toys] employee call the police or Sheriff," (Defs. 56.1 ¶ 65), and there is no other evidence in the record from which a reasonable jury could conclude that "a 'plan, or prearrangement, conspiracy, cus-

tom, or policy' [existed] between [Defendants] and law enforcement authorities." *Velez,* 2008 WL 5329974, at *3, 2008 U.S. Dist. LEXIS 101709, at *10.[7]

### (5) Plaintiffs' Section 1985 Conspiracy Claims

Plaintiffs have not "provided any facts to support this claim, do[ ] not address this claim in any of [their] supporting papers to the Court, and merely make[ ] a conclusory statement in [their] Complaint that a conspiracy existed between [D]efendants." *Nicholas v. Tucker,* No. 95 Civ. 9705, 2000 U.S. Dist. LEXIS 749 at *31–32 (S.D.N.Y. 2000). Plaintiffs' conspiracy claim, therefore, is dismissed. *Id.*; *see also Palmieri v. Lynch,* 392 F.3d 73, 86 (2d Cir.2004).

### (6) Plaintiffs' State Law Claims

Defendants argue, among other things, that "analysis of [P]laintiffs' state law claims should be identical to the analysis of [P]laintiffs' federal discrimination claim." (Defs. Mem. at 24.) And, "Plaintiffs agree . . . that the analysis of their state claims should be identical to that of their federal discrimination claims." (Pls. Mem. at 23.)

 Material issues of fact exist as to the New York Plaintiffs' claim under New York Executive Law § 296 because "a claim of discrimination pursuant to New York Executive Law § 296 is subject to the same analysis as a claim of discrimination under federal law." *Morris v. Ales Group USA, Inc.,* No. 04 Civ. 8239, 2007 WL 1893729, at *11, 2007 U.S. Dist. LEXIS 47674, at *31 (S.D.N.Y. June 29, 2007). And, material issues of fact similarly exist as to Plaintiffs' claim under New York Civil Rights Law § 40 "because the standards governing claims asserted pursuant

---

7. The Court need not analyze the second element of this claim because "the failure to allege a civil rights violation by someone acting under color of state law is fatal to assert-

ing a § 1983 action." *Lehner v. TD Bank N.,* No. 08 Civ. 1129, 2008 WL 5000532, at *2, 2008 U.S. Dist. LEXIS 94143, at *4 (N.D.N.Y. Nov. 19, 2008).

to 42 U.S.C. § 1981 are identical to those for claims asserted pursuant to the ... New York Civil Rights Law." *Joseph v. New York Yankees Pshp.*, No. 00 Civ. 2275, 2000 WL 1559019, 2000 U.S. Dist. LEXIS 15417 (S.D.N.Y. Oct. 13, 2000).

### *Withdrawal of Class Action Allegations*

█ Defendants "request that this Court order withdrawal of the class action allegations *nunc pro tunc*" because Defendants "wish—in view of the complete failure of Plaintiffs to pursue class allegations—to avoid any implied toll of the statute of limitations by putative class members that could arise under the authority of *American Pipe Construction Co. v. Utah*, 414 U.S. 538 [94 S.Ct. 756, 38 L.Ed.2d 713] (1974)," (Reply Aff. of Ronald M. Cherry, undated ("Cherry Reply Aff."), at ¶ 3), where the United States Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe Constr. Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974).

The Court denies Defendants' *nunc pro tunc* application. If another (class) action is brought, "the tolling problem is best dealt with in connection with the specific facts of that case." *In re Simon II Litig.*, 233 F.R.D. 123, 125 (E.D.N.Y.2006).

### V. Conclusion and Order

For the reasons stated herein, the Defendants' motion [# 43] is granted in part and denied in part. The New York Plaintiffs' "equal benefit" claim under Section 1981 and related state law claims under New York Executive Law § 296 and New York Civil Rights Law § 40 may proceed. Plaintiff Rhodes' claims and all of the New York Plaintiffs' other claims are dismissed.

The parties are directed to appear for a pre-trial/settlement conference on July 30, 2009 at 10:00 a.m. in Courtroom 21B (21st floor), 500 Pearl Street, U.S. District Courthouse. **The parties are expected to engage in good faith settlement discussions prior to the conference.**